2023–1059, –1085, –1086, –1089, –1125

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SIERRA WIRELESS, ULC, HONEYWELL INTERNATIONAL INC., TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC., TELIT CINTERION DEUTSCHLAND GMBH, F/D/B/A THALES DIS AIS DEUTSCHLAND GMBH,

*Appellants,*

v.

SISVEL S.P.A.,

*Cross-Appellant.*

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2021-00580

## APPELLANTS' REPLY BRIEF AND RESPONSE BRIEF OF CROSS-APPELLEE

October 20, 2023

Kourtney Mueller Merrill
Amanda Tessar
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado
Phone: (303) 291-2388
E-mail: kmerrill@perkinscoie.com
atessar@perkinscoie.com

**COUNSEL FOR APPELLANT SIERRA WIRELESS, ULC**

*[additional counsel on inside cover]*

Bradford F. Cangro
**PV LAW LLP**
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 869-4667
bradford.cangro@pvuslaw.com

Jeremy D. Peterson
**PV LAW LLP**
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 871-0140
jeremy.peterson@pvuslaw.com

**COUNSEL FOR APPELLANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC.**

Jeffrey Gargano
Erik Halverson
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 807-4226
jeffrey.gargano@klgates.com
erik.halverson@klgates.com

Brian P. Bozzo
**K&L GATES LLP**
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-6500
brian.bozzo@klgates.com

**COUNSEL FOR APPELLANT HONEYWELL INTERNATIONAL INC.**

Guy Yonay
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0800
gyonay@pearlcohen.com

Kyle Auteri
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0824
kauteri@pearlcohen.com

**COUNSEL FOR APPELLANT TELIT CINTERION DEUTSCHLAND GMBH F/D/B/A THALES DIS AIS DEUTSCHLAND GMBH**

## CLAIMS 1-5 OF THE '396 PATENT

**Claim 1.** [pre] A method of performing automatic repeat request (ARQ) in a wireless communication system, the method performed by a receiver and comprising:

[1a] detecting whether at least one data block to be received from a transmitter is missed;

[1b] starting a timer when the at least one data block is detected as missed;

[1c] stopping the timer when the at least one data block is received from the transmitter while the timer is running, in order to prevent a triggering of a status report before the timer expires; and

[1d] transmitting the status report to the transmitter after the timer expires, wherein the status report comprises a positive acknowledgement indicating receipt of at least one received data block.

**Claim 3.** The method of claim 1, wherein the at least one data block is detected as missed when a sequence number (SN) following a SN of a data block with a highest SN among received data blocks is larger than a lowest SN of the at least one data block to be received.

**Claims 4/9.** The [method/receiver] of claim [1/8], wherein the at least one data block is detected as missed when a sequence number (SN) following a SN of a data block with a highest SN among received data blocks is larger than a SN following a last in-sequence received data block.

**Claims 5/10.** The [method/receiver] of claim [1/8], wherein the timer is stopped when a sequence number (SN) following a SN of a data block with a highest SN among received data blocks when the timer was started is the same as a SN following the last in-sequence received data block.

Appx209-210(16:39-17:5, 18:9-18) (emphasis added).

## CERTIFICATES OF INTEREST

Counsel for Appellant Sierra Wireless, ULC certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   **Sierra Wireless, ULC**

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   **Sierra Wireless America, Inc.**

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

   **Semtech Corporation**
   **Semtech Limited**
   **Semtech (International) AG**
   **Semtech UK Holding Ltd.**

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

   (a) **Perkins Coie: David St. John-Larkin, Roderick O'Dorisio**

   (b) **Not applicable**

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes**

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: October 20, 2023

By: */s/ Kourtney Mueller Merrill*
Kourtney Mueller Merrill

## CERTIFICATES OF INTEREST

Counsel for Appellants TCL Communication Technology Holdings Limited; TCT Mobile International Limited; TCT Mobile, Inc.; TCT Mobile (US) Inc.; and TCT Mobile (US) Holdings Inc. certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

TCL Communication Technology Holdings Limited
TCT Mobile International Limited
TCT Mobile, Inc.
TCT Mobile (US) Inc.
TCT Mobile (US) Holdings Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

**None/Not Applicable**

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

TCL Electronics Holdings Limited
TCT Mobile Worldwide Limited
TCT Mobile (US) Holdings Inc.
TCT Mobile (US) Holdings Inc.
Winning Synergy Limited

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

**None/Not applicable**

5. Related Cases. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

- *Sisvel Int'l SA et al. v. Cradlepoint, Inc.*, Case No. 19-cv-01142 (D. Del.);
- *Sisvel Int'l SA et al. v. Honeywell International, Inc.*, Case No. 1:19-cv-01143 (D. Del.);
- *Sisvel Int'l SA et al. v. Verifone Sys., Inc.*, Case No. 19-cv-01144 (D. Del.);
- *Sisvel Int'l SA v. Xirgo Techs.*, Case No. 19-cv-01145 (D. Del.); and
- *Sisvel Int'l SA v. HMD Am., Inc.*, 1:20-cv-22051 (S.D. Fla.).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: October 20, 2023 By: /s/ Jeremy D. Peterson
Jeremy D. Peterson

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1059, 2023-1085, 2023-1086, 2023-1089, 2023-1125

**Short Case Caption** Sierra Wireless, ULC v. Sisvel S.p.A

**Filing Party/Entity** Honeywell International Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/20/2023

Signature: /s/ Erik Halverson

Name: Erik Halverson

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Honeywell International Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1059, 23-1085, 23-1086, 23-1089, 23-1125

**Short Case Caption** Sierra Wireless, Inc. v. Sisvel S.p.A.

**Filing Party/Entity** Telit Cinterion Deutschland GmbH

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/20/2023

Signature: /s/Guy Yonay

Name: Guy Yonay

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Telit Cinterion Deutschland GmbH | Telit Cinterion USA LLC | Thales S.A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CLAIMS 1-5 OF THE '396 PATENT ....................................................................i

CERTIFICATES OF INTEREST ................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................v

TABLE OF ABBREVIATIONS AND CONVENTIONS .................................................... vii

I. INTRODUCTION .........................................................................................1

II. APPELLANTS' ARGUMENTS IN REPLY TO APPELLEE'S RESPONSE .......................4

A. Sisvel Cannot Rationalize the Board's Artificial and Legally Erroneous Partitioning of Sachs' Teachings ............................................5

1. Sachs' Summary Explanation of Its Collective Teachings Is Reason Enough to Consider the Full Scope of Its Teachings..........6

2. The Different Data Transmission *Scenarios* Taught in Sachs' Figures 4 and 5 Are Not Different Receiver *Systems* ....................10

a. Appellants Did Not "Forfeit" Arguments Regarding Figures 4 and 5...................................................................10

b. Sisvel's "Embodiments" Argument Ignores Sachs' Explicit Teachings and Fails to Identify a Single Difference in the RLC Receiver of Figures 4 and 5 ...........13

c. Sachs' Disclosures for the Delay Timer Expiring and Stopping Are Not "Different and Incompatible Functionality" ...................................................................16

d. Sachs' Examples for Out-of-Order PDUs Are Not Different "Systems" ..........................................................16

e. Sachs Discloses the "Same" System...................................18

f. Inconsistent Testimony from Sisvel's Declarant Cannot Overcome Sachs' Explicit Disclosures...................19

g. Sisvel Argues that Sachs Is Missing Elements but Does Not Say What They Are ............................................22

h. Appellants Never "Forfeited" Any Anticipation or Obviousness Arguments ....................................................23

i. Sisvel's Harmless Error Argument Ignores Dependent Claims 3-5 and 9-10..........................................................25

3. The Addition of Another, Unclaimed Variable to Sachs' Figures 6 and 7 Does Not Make Them Different Prior Art Disclosures ..........................................................................26

4. No Motivation to Combine Sachs' Teachings Is Needed.............29

B. Sisvel Cannot Exculpate the Board for Its Failure to Consider *all* Arguments Presented in the Petition ......................................................32

C. Sisvel Cannot Resurrect Its Declarant's Fatal Lack of Education and Relevant Expertise on Appeal ........................................................37

1. The Board's Reliance on Unqualified Testimony to Conclude Appellants Had Not Met Their Burden for Dependent Claims 3-5 and 9-10 Is Not a Harmless Error ............................................37

2. An Unqualified Declarant May Not Testify as to Anticipation or Its Underlying Questions ........................................................38

3. Sisvel's Declarant Did Not Meet the Level of Ordinary Skill in the Art......................................................................................41

III. CROSS-APPELLEES' RESPONSE...........................................................................43

A. The Board Applied the Correct Legal Standard for the Mutually-Exclusive Conditional Claims of the '396 Patent ....................................44

1. Independent Claim 1 Is a Conditional Claim................................44

2. The Board's Invalidity Determination for Independent Claim 8 Should Similarly Be Upheld ....................................................50

B. The Board's Factual Determination that Sachs Teaches and Suggests Limitation 1[c] Is Supported by Substantial Evidence .............54

C. Sisvel's Belated Request to Construe Its Claims to Be "Nonsensical" (and Therefore Indefinite) Should Not Allow It To Escape the Board's Invalidity Determination .........................................56

IV. CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..........................................58

## TABLE OF AUTHORITIES

### CASES

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015)....5, 8, 21

*BlephEx, LLC v. Myco Industries*,
24 F.4th 1391 (Fed. Cir. 2022)....26

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016)....21

*Consol. Edison Co. of N.Y. v. NLRB*,
305 U.S. 197 (1938)....46, 54

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016)....49

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018)....54, 55, 56

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018)....21

*Ex parte Schulhauser*,
Appeal No. 2013-007847, 2016 WL 6277792 (PTAB Apr. 28, 2016).... passim

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)....28

*Finjan, Inc. v. Cisco Sys., Inc.*,
837 F. App'x 799 (Fed. Cir. 2020)....51

*Gen. Elec. Co. v. Raytheon Techs. Corp.*,
983 F.3d 1334 (Fed. Cir. 2020)....31

*Hayward Indus., Inc. v. Pentair Water Pool & Spa, Inc.*,
814 F. App'x 592 (Fed. Cir. 2020)....5, 8, 21

*Hytera Comm'ns Co. v. Motorola Sols., Inc.*,
841 F. App'x 210 (Fed. Cir. 2021)....46, 47, 48, 50

*In re Crish*,
393 F.3d 1253 (Fed. Cir. 2004)....10

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002)....................33, 35, 36

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) ....................50, 58

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)....................12, 13, 24

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
780 F.3d 1376 (Fed. Cir. 2015).................... passim

*Kyocera Senco Indus. Tools, Inc. v. ITC*,
22 F.4th 1369 (Fed. Cir. 2022) ....................2, 40, 43

*Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*,
609 F.3d 1364 (Fed. Cir. 2010)....................46, 47

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008)....................7, 9, 10

*Orion IP, LLC v. Hyundai Motor Am.*,
605 F.3d 967 (Fed. Cir. 2010)....................27, 28, 29, 30

*Perricone v. Medicis Pharm. Corp.*,
432 F.3d 1368 (Fed. Cir. 2005)....................21, 23

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
948 F.3d 1342 (Fed. Cir. 2020)....................57

*SEB S.A. v. Montgomery Ward & Co.*,
594 F.3d 1360 (Fed. Cir. 2010), *aff'd sub nom.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)....................39, 40

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021)....................49

*Victaulic Co. v. Iancu*,
753 F. App'x 895 (Fed. Cir. 2018) ....................8, 9, 27

**OTHER AUTHORITIES**

37 C.F.R. § 42.23 ....................13, 20, 24

Fed. R. Evid. 702 ....................39

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| **Abbreviation** | **Term** |
|---|---|
| ’396 patent | U.S. Patent No. 7,869,396 |
| 3GPP | Third Generation Partnership Project |
| ACK | acknowledgement message |
| Appellants | Appellants Honeywell International Inc., Sierra Wireless, ULC, TCL Communication Technology Holdings Limited, TCT Mobile International Limited, TCT Mobile, Inc., TCT Mobile (US) Inc., TCT Mobile (US) Holdings, Inc., and Telit Cinterion Deutschland GmbH, f/d/b/a Thales DIS AIS Deutschland GmbH |
| Appx#### | joint appendix page #### |
| ARQ | automatic repeat request |
| BB | Appellants’ Opening Brief |
| Board or PTAB | Patent Trial and Appeal Board |
| CDMA | Code Division Multiple Access |
| FEC | forward error correction |
| HARQ | hybrid ARQ (automatic repeat request) |
| Honeywell | Appellant (PTAB Petitioner) Honeywell International Inc. |
| IPR | *inter partes* review |
| NACK | negative acknowledgement message |
| PDU | protocol data unit |
| POSITA | person of ordinary skill in the art |
| RB | Appellee’s Principal and Response Brief |

| **Abbreviation** | **Term** |
|---|---|
| RLC | radio link control |
| RLP | radio link protocol |
| Sierra Wireless | Appellant (PTAB Petitioner) Sierra Wireless, ULC, f/k/a Sierra Wireless, Inc. |
| Sisvel | Appellee (PTAB Patent Owner) Sisvel S.p.A. |
| SN | sequence number |
| TCL | Appellants (PTAB Petitioner) TCL Communication Technology Holdings Limited, TCT Mobile International Limited, TCT Mobile, Inc., TCT Mobile (US) Inc., and TCT Mobile (US) Holdings, Inc. |
| Telit | Appellant (PTAB Petitioner) Telit Cinterion Deutschland GmbH, f/d/b/a Thales DIS AIS Deutschland GmbH |
| UMTS | Universal Mobile Telecommunication System |
| USPTO | United States Patent and Trademark Office |
| WCDMA | Wideband Code Division Multiple Access system |
| (*x*:*y*-*z*) | column x, lines y-z |

# I. INTRODUCTION

***Appellants' Appeal:*** Sisvel throws everything but the kitchen sink at Appellants' appeal of the Board's determination that Appellants did not establish by a preponderance of the evidence that five dependent claims of the '396 patent are unpatentable—claims that even Sisvel's declarant agrees fail to add anything novel. Sisvel's arguments range from pleas that Appellants' grounds and evidence from the Petition are somehow "forfeited," to pronouncements that Appellants failed to show any harm from the Board's adverse determinations, to arguing again and again that the single anticipatory Sachs reference with its integrated description and figures must actually be treated as ***at least six*** separate prior art references. Sisvel presents this last argument multiple times in multiple ways, but it always reduces to the suggestion that Sachs' use of the word "embodiment" overrides all of Sachs' overall teachings and specific explanation for the interrelationship between each of its figures. That cannot be right. The test for anticipation is whether a single prior art reference discloses explicitly or inherently each of the limitations. Sachs' disclosures and the ***only*** expert testimony in the proceedings below were consistent that Sachs' figures are all part of its overall disclosure. The fact that Sachs' disclosures mirror the exact same scenarios of the '396 patent's independent and dependent claims does not render Sachs inapplicable; it is proof of invalidity.

Sisvel also tries to, but cannot, rehabilitate the testimony of its proposed declarant, who does not qualify as a POSITA under the definition adopted by the Board. The law—including even the authority on which Sisvel relies—is clear that testimony "on any issue that is analyzed through the lens of an ordinarily skilled artisan," including anticipation and obviousness, is neither relevant nor reliable if not given by a person of at least ordinary skill in the art. *Kyocera Senco Indus. Tools, Inc. v. ITC*, 22 F.4th 1369, 1367-77, 1377-78 (Fed. Cir. 2022). The Board's reliance on Mr. Bates' testimony is therefore further error necessitating reversal or at least remand.

***Sisvel's Cross-Appeal:*** Sisvel's position in opposition to Appellants' appeal is also impossible to reconcile with Sisvel's own cross-appeal. While Sisvel argues in its opposition that Sachs' figures must be read and considered in isolation as separate references because they show a timer that is stopped in one example (when the missing data packet arrives) and expired in the next (when the missing data packet does not), Sisvel nevertheless, and inconsistently, criticizes the Board in its cross-appeal for not determining that the challenged claims require a timer that ***both*** stops and expires. Sisvel cannot have it both ways: it cannot argue that its claim should be read as a single invention with a timer that stops and expires while simultaneously insisting Sachs' disclosure of a timer that can stop or expire are "different and incompatible" systems.

Sisvel also bases its cross appeal on the Board's supposed reliance on *Ex parte Schulhauser* to conclude that the '396 patent claims are conditional. But, in fact, the Board never once cited to or relied on *Schulhauser*. Moreover, even if it had, the Court has distinguished the mutually-exclusive and complete limitations of *Schulhauser* from its treatment of different styles of conditional claims previously before the Court. Here, the Board considered and determined that the limitations of the independent claims of the '396 patent were mutually exclusive and complete (similar to *Schulhauser*), so the Board was reasonable to conclude that anticipation of one of the two alternative methods anticipated the entire claim.

Finally, Sisvel is seemingly willing to cut off its nose to spite its face: it asks the Court to adopt the dissent's literal and "nonsensical" claim interpretation, essentially arguing that its own claims are invalid under Section 112 such that the Board should never have conducted a prior art analysis under Sections 102 and 103 in the first place. Appellants do not dispute that the '396 patent suffers from multiple, fatal defects, but Sisvel should not be permitted to dodge review here by belatedly advocating that its claims are indefinite, as explained below.

Appellants respectfully request that the Court reverse the Board's determination as to dependent claims 3-5 and 9-10 and affirm the Board's invalidity determination as to claims 1-2 and 6-8.

## II. APPELLANTS' ARGUMENTS IN REPLY TO APPELLEE'S RESPONSE

Sisvel attempts to distract the Court from the key legal and evidentiary issues relevant to Appellants' appeal by pointing to the supposed "complexity" of Sachs' teachings and by focusing on extraneous details about Sachs' enabled teachings (while glossing over the key parts of Sachs). But Sisvel cannot seriously dispute that Sachs explicitly teaches each of the limitations of dependent claims 3-5 and 9-10—both in Sachs' overall "Summary" teachings of an RLC receiver delay timer that can expire or be stopped based on whether the missing PDUs arrive, as well as in the specific examples shown in Sachs' Figures 4-7. These figures are not nearly so complex as Sisvel portrays, moreover, especially not to a POSITA, as already shown in the record below.

Sisvel attempts to artificially partition Sachs' teachings into separate disclosures because Sachs refers to its examples of various data packet (*i.e.*, PDU) delivery scenarios "embodiments." There is no basis in Sachs or the law for splicing a reference's teachings in this manner, however. Moreover, the only qualified expert in this proceeding testified at length and in detail as to Sachs' teachings—and that testimony does ***not*** support Sisvel's reading. There is therefore no legal or evidentiary basis for the Board's determination that the teachings in Sachs' figures were not combinable or that a separate motivation to combine each of Sachs' figures is required in order for a POSITA to understand the breadth of Sachs' explicit

teachings. To the contrary, the single Sachs reference can and should be considered as a whole for all that it teaches.

The Board's determination as to dependent claims 3-5 and 9-10 should therefore be reversed or at least remanded for review under the full scope of Sachs' teachings together, as is required under a correct application of the law.

### A. Sisvel Cannot Rationalize the Board's Artificial and Legally Erroneous Partitioning of Sachs' Teachings

The Board did not identify a single limitation of dependent claims 3-5 and 6-7 of the '396 patent that is not expressly taught by Sachs in the Final Written Decision. Sisvel claims otherwise (RB at 42), but, tellingly, fails to identify any missing limitations. Rather, Sisvel parrots the Board's erroneous conclusion that Sachs' disclosures were "differing embodiments" that required a combination and a specific motivation to combine. The Board's failure to consider Sachs' collective teachings together, despite Sachs' summary explanation of its disclosure and its clear explanation for the interrelationship between its figures (whether called "embodiments" or not), fails as a matter of law. *Hayward Indus., Inc. v. Pentair Water Pool & Spa, Inc.*, 814 F. App'x 592, 596 (Fed. Cir. 2020) ("[P]rior art references should be considered for ***all*** that they teach, rather than being limited to a particular embodiment or the claimed invention of the prior art.") (emphasis added); *see also Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015).

### 1. Sachs' Summary Explanation of Its Collective Teachings Is Reason Enough to Consider the Full Scope of Its Teachings

The Board's failure to consider Sachs for all that it teaches is epitomized by its failure to consider Sachs' "Summary" explanation, which ties all of Sachs' relevant teachings back to an RLC receiver with a delay timer that can expire or stop. Sisvel tellingly buries its response to this argument—*i.e.*, Appellants' lead argument—near the end of its presentation. *See* RB at 47-48 (responding to Appellants' first argument third). That is because Sisvel has no compelling response.

Sisvel instead resorts to incorrectly criticizing Sachs as "nowhere" explaining in its "Summary" that Figures 4-7 "constitute the same embodiment or how to combine the individual embodiments in those figures." *Id.* at 47. To support this point, Sisvel points only to curated excerpts of Sachs' figure descriptions, which, unsurprisingly, describe each figure, but Sisvel carefully omits Sachs' overall explanation in the "Summary" and Sachs' explanation of the interrelationship between the figures in the detailed description. *Id.* at 47-48 (pointing only to excerpts from Appx1278-1285, while ignoring Sachs' "Abstract," "Background," and "Summary and description" at Appx1265 and Appx1267-1277 and omitting Sachs' progressive description of the RLC entity and timer in the figures). In short, Sisvel claims to tell the Court what Sachs' "Summary" teaches (or purportedly fails to teach) without actually addressing the contents of the "Summary" at all.

The Summary, notably, expressly contemplates that Sachs' teachings are part of its collective disclosures for "***a*** solution for an efficient data transmission …. to avoid spurious retransmissions." Appx1274 (emphasis added). Appellants quoted Sachs' further teaching of this ***single***, overall disclosure of a timer that can be stopped or expired, which is repeated here for the Court's convenience:

> In acknowledged mode of a data transmission[,] it is advantageous to ***delay*** a request for a retransmission of missing data packets by the timer. ***It is preferable to request the retransmission for the missing data packets after the timer expires.*** With this solution it is guaranteed that during the duration of the timer no retransmission is performed for the data packets, which possibly will arrive in this time interval. ***In a preferred embodiment[,] the timer is stopped before the timer expiry when at the reception of a data packet the sequence is established.***

BB at 43-44 (emphasis added in BB) (quoting Appx1275-1276(9:24-10:4)); *see also id*. (discussing Sachs' disclosures at Appx1276(10:6-10)). Presumably keying in on the use of the phrase "preferred embodiment," Sisvel claims that this quotation "speaks of different embodiments" (RB at 48), but that is an incorrect characterization. Rather, Sachs describes its teachings for what to do if the timer expires or if the timer is stopped ***together***. No combination is necessary—no "picking, choosing, and combining various disclosures not directly related to each other." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). It is all part of Sachs' collective teaching for using the disclosed delay timer with the overall goal of a system that receives (one way or another) data transmitted to it. Of

course it is "preferred" that the data arrives and is able to be put in order without the need for a retransmission request, but Sachs also discloses what happens if that "preferred" scenario (or "embodiment") is not realized.

Sisvel has no response to, and does not even mention, the rules of *Hayward* and *Belden*: that prior art references "should be considered for all that they teach, rather than being limited to a particular embodiment or the claimed invention of the prior art." 814 F. App'x at 596; 805 F.3d at 1076. And Sachs ***should*** be considered for all of it teachings, from its Summary to each of the descriptions and disclosures of Figures 4-7, whether those figures are called "embodiments" or not. Instead, Sisvel focuses only on *Victaulic Co. v. Iancu*, 753 F. App'x 895, 900 (Fed. Cir. 2018), arguing that this decision is "misplaced" because *Victaulic* involved a summary that "expressly disclosed" and "expressly taught" the claim limitation. RB at 48. *Victaulic* rejected arguments identical to those presented by Sisvel, and Sachs' summary teachings here are even more "expressly disclosed" and more "expressly taught" than in *Victaulic*. Specifically, the patent owner in *Victaulic* argued, just as Sisvel does here, that the prior art's summary of invention disclosures "are limited to describing only the preferred embodiments" and "merely preview the two embodiments that come later." *Victaulic*, 753 F. App'x at 900. The Court explained it was "aware of no precedent limiting statements like those in the summary of invention here to describing nothing more than the preferred embodiments." *Id*. The

Court further pointed to *Kennametal* as relevant and distinguished *Net MoneyIN* because that case involved limitations that were not disclosed in the same way as recited in the claim. *Id*. (discussing *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376 (Fed. Cir. 2015), and *Net MoneyIN*, 545 F.3d at 1359). *Net MoneyIN* does not apply here either; Sachs discloses the ’396 claim limitations in the same way as the ’396 patent: an RLC entity with a delay timer. No “combination” or “combinability” is needed.

In short, the Court’s reasons for finding the claimed limitation disclosed in *Victaulic* are even stronger here because Sachs explicitly summarizes that the delay timer can either be expired or stopped in its “Summary”: a request for retransmission is requested if the timer expires and not sent if the missing data packet arrives and “the timer is stopped before the timer expiry.” Appx1275-1276(9:28-10:4). There can therefore be no justification for artificially partitioning Sachs’ teachings for a stopped timer and an expired timer into different “disclosures” or requiring a motivation to combine when Sachs itself explicitly connects those alternatives. Indeed, Sachs went above and beyond to create figures providing a detailed showing of its teachings. This should not be held against Sachs or Appellants.

As discussed further below, Sachs’ “Summary” indisputably further explains that an optional non-claimed feature, a state variable, can be ***added*** to the RLC receiver described above and shown in Sachs’ Figures 4 and 5. Appx1276(10:6-10)

(explaining that a state variable is preferably used when data packet reordering is frequent). But adding an extraneous feature in Figures 6 and 7 requires no "picking, choosing, or combining" by a POSITA to use Sachs' underlying teachings either. *See Net MoneyIN*, 545 F.3d at 1371.

### 2. The Different Data Transmission ***Scenarios*** Taught in Sachs' Figures 4 and 5 Are Not Different Receiver ***Systems***

Sisvel jams nine overlapping and occasionally repetitive arguments into its response regarding Figures 4 and 5. Appellants address each of these arguments in the order presented by Sisvel.

#### a. Appellants Did Not "Forfeit" Arguments Regarding Figures 4 and 5

Sisvel first claims that Appellants have somehow "forfeited" the ability to argue that Figures 4 and 5 are part of the same "embodiment." RB at 38. This is wrong.

Preliminarily, Appellants do not need to prove that Figures 4 and 5 are the same "embodiment." The test for anticipation is whether a single prior art reference discloses explicitly or inherently each of the limitations. *See, e.g.*, *In re Crish*, 393 F.3d 1253, 1256 (Fed. Cir. 2004). Figures 4 and 5 teach all of the limitations of the challenged claims, and they do so in the same configuration and in the same manner as the claims of the '396 patents. Sachs therefore anticipates.

But even if that was not the law, Appellants ***did*** explain in the Petition that Figures 4 and 5 were the ***same embodiment***. To its credit and despite its "forfeiture" argument, even Sisvel ***admits*** that Appellants argued in the Petition that Figures 4 and 5 not only describe the same RLC receiver, but are the same "embodiment." *See* RB at 38 ("Figure 5 (above right) teaches the same embodiment except that, in this example, all of the missing data blocks (1-4) are received before the timer expires.") (quoting Petition at Appx277). Sisvel's claim that this argument was unsupported is demonstrably false; this sentence was followed by a citation to expert testimony on point. Appx277 (citing Appx1181-1183(¶¶171-173) ("Figure 4 is provided as a baseline for Sachs' teachings if the missing PDUs do not arrive…. Figure 5 above, by contrast, illustrates Sachs' teachings if the missing PDUs do arrive at the receiver before the timer's expiration."). There is therefore no basis for Sisvel to insist that this timely presented and preserved argument is "forfeited," nor any excuse for Sisvel minimizing Appellants' arguments below by claiming those arguments were made only in a "single conclusory sentence." RB at 38.

Any such assertion is flat wrong. Appellants ***repeatedly*** argued and presented evidence to the Board that Sachs' Figures 4 and 5 teach the same system, and it did so to a far greater extent than Sisvel has acknowledged. For instance, Appellants included a detailed explanation of Sachs' teachings in the Petition. *See* Appx258-263. In that explanation, Appellants unambiguously introduced and explained that

Sachs' Figure 4 was "one implementation" of Sachs' "timer-based retransmission system." Appx261. Appellants then clearly introduced Figure 5 as teaching the same thing "except that, in this figure, the missing PDUs are received before the T_reorder timer expires." Appx263. Appellants proceeded to consistently present Figures 4 and 5 together, including "side-by-side comparison[s]" to "visually depict[] Sachs' teachings" for a stopped versus an expired timer. Appx276; *see also* Appx272, Appx274, Appx277, Appx278 (claim 1 of the '396 patent). Appellants likewise argued that "Figure 5 (above right) ***teaches the same embodiment*** except that, in this example, all of the missing data blocks (1-4) are received before the timer expires." Appx277 (emphasis added). These arguments are supported by detailed expert testimony, again confirming that Figures 4 and 5 show the same disclosed system (here, the same receiver) merely responding to PDUs arriving out of order in different scenarios. *See, e.g.*, Appx1181-1183(¶¶171-173).

Figures 4 and 5 were also addressed in detail in Appellants' Reply. *See, e.g.*, Appx626-627 (section titled "A POSITA Would Understand Sachs Figures 4 And 5 Describe Examples Of The ***Same*** RLC Entity Receiving Different PDU Sequences") (emphasis in original). The suggestion that Appellants arguments were limited to "a single conclusory sentence," *see* RB at 38, is simply not credible.

Sisvel relies on *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016), for its bald claim that Appellants "forfeited" this

issue. RB at 38. In doing so, Sisvel misapplies *Intelligent Bio-Systems. Intelligent Bio-Systems* evaluated a "new theory of invalidity" on appeal, supported by several new non-patent literature references that were not relied upon in the underlying petition. *Id*. The panel then found that, "[i]n these circumstances, … the Board did not err in refusing the reply brief as improper under 37 C.F.R. § 42.23(b)." *Id*. at 1370. The case here is totally unlike *Intelligent Bio-Systems*. Appellants presented no "new theory of invalidity," no new references, and no new arguments. And the Board certainly made no finding that Appellants' Reply was improper under 37 C.F.R. § 42.23(b). Nor could it. The Petition properly presented and provided declaratory support for its reliance on Sachs' Figures 4 and 5 as the same receiver merely responding to different stimuli, *i.e.*, the same disclosed receiver responding to different scenarios in which PDUs arrive out of order. Moreover, even if it had not already been presented in the Petition (and it was), Appellants are permitted under 37 C.F.R. § 42.23(b) to respond to arguments raised in the institution decision and Sisvel's response. Nothing was "forfeited" here.

#### b. Sisvel's "Embodiments" Argument Ignores Sachs' Explicit Teachings and Fails to Identify a Single Difference in the RLC Receiver of Figures 4 and 5

Sisvel next argues that "Sachs expressly refers to and describes Figures 4 and 5 as separate discrete systems with different structures." RB at 38. This is false. Sachs ***never*** expressly or impliedly refers to Figures 4 and 5 as "separate discrete

systems" or having "different structures." Instead, this argument relies entirely on the questionable assumption that Sachs—a patent application that names six German, Swedish, and Finnish inventors and was prosecuted by a German patent agent—used the term "embodiment" in 2001 to mean different, discrete teachings not intended to be read together. More importantly, the context of Sachs' usage of "embodiment" belies any such suggestion.

Sisvel asks the Court to find that Sachs' use of the term "embodiment" means that each figure in Sachs describes an entirely different system. But they do not. Sachs never identifies a single difference between the receiver system (*i.e.*, the RLC entity) with a delay timer in Figure 4 as compared to the receiver system with a delay timer in Figure 5. This is for a reason: Sachs ***expressly*** uses these figures with the same RLC entity with a delay timer to demonstrate how that same RLC receiver responds in two possible scenarios, one in which the timer expires (Figure 4), and the other in which the timer stops (Figure 5). *See* Appx1280(14:1-6) (explaining that Figure 5 depicts what happens "when all outstanding PDUs are received and the sent sequence is re-established" and "the duration of the T_reorder timer" is stopped).

In other words, Sachs itself expressly contradicts Sisvel's claim that these figures teach different "systems." Sachs unambiguously explains that Figure 4 "shows RLC receiver, RLC and a link with the integrated MAC-HSDPA layer, Link

(MAC-HSDPA)." Appx1278(12:29-30); *see also* Appx1278-1279(12:28-13:9) (further describing the RLC receiver). When Sachs then turns to Figure 5 to show what happens when the timer is instead stopped, it does not introduce or describe a new RLC receiver. Instead, Sachs says only that Figure 5 is similar to Figure 4, carrying forward that same system. Appx1280(14:6-7).

Sisvel notes that Sachs refers to the receipt of the missing PDUs as "a stop timer ***event***" (Appx1278(12:5) (emphasis added)), but that language is more properly read to reference a ***scenario*** in which a missing PDU arrives before the timer expires, not to signal a separate "embodiment." It does not mean that there is a new or different system taught here. Figure 5 simply shows the second of two potential taught outcomes for the disclosed T_reorder timer: the timer either expires or it stops. In Figure 5, the missing PDUs arrive and the timer stops: "a stop timer event." Sisvel's attempt to claim that the stopped timer in Figure 5 is a "critical distinction" falls flat because reducing reaction time is the entire point of the timer's inclusion in the first place and in no way limited to Figure 5. *See, e.g.*, Appx1275-1276 (explaining in the "Summary" that the timer is stopped when the missing data packet arrives so that "the undesired effect" of waiting for the timer to expire "is avoided"); Appx1277 ("The status report can be sent after the timer expires or after the timer is stopped.").

#### c. Sachs' Disclosures for the Delay Timer Expiring and Stopping Are Not "Different and Incompatible Functionality"

In its third argument, Sisvel attempts to frame the teachings of a timer expiring and stopping in Figures 4 and 5, respectively, as "different and incompatible functionality." RB at 39. In addition to the explanation above as to why this suggestion cannot be reconciled with the actual disclosures of Sachs (*see* §§ II.A.1, II.A.2.b, *supra*), Sisvel's attempt to characterize the disclosed RLC receiver with a delay timer that can either expire or stop as "different and incompatible" is impossible to reconcile with Sisvel's own cross-appeal, which argues that it is "improper" to characterize limitations 1[c] and 1[d] directed to the timer stopping and expiring as "alternatives" because it claims both can be performed. *See* RB at 67. Sisvel simply ignores this inconsistency.

#### d. Sachs' Examples for Out-of-Order PDUs Are Not Different "Systems"

In its next re-packaging of its "Sachs has six embodiments argument," Sisvel attempts to cabin Sachs' Figures 4 and 5 to the specific sequence of PDUs used for those examples, arguing Figures 4 and 5 "teach[] that ***different*** sequences of [data packets, *i.e.*, PDUs] are transmitted in distinct systems disclosed in Figures 4 and 5." RB at 39 (emphasis in original). In short, Sisvel attempts to describe Figures 4 and 5 as different "systems" because the data packets being received in those examples arrive in a different order. This is nonsensical.

Sachs (and the ’396 patent) are directed to the problem of data packets in a communication system arriving out of order or sometimes not at all. *See, e.g.*, Appx1166(¶¶144-145); *see also* Appx1272(6:34-7:15); Appx1274-1275(8:25-9:2). In other words, Sachs is directed to adapting to the ***unpredictability*** with which the PDUs are received. The RLC receiver does not and cannot control whether and the order in which PDUs arrive, so Sachs (and the ’396 patent) disclose the same use of a timer to delay making a decision as to whether any missing PDUs are simply arriving out-of-order (no retransmission needed) or are lost (retransmission needed). *Compare* Appx208(14:23-33) *with* Appx1273(7:5-15) (discussing the problem of lost and delayed data packets) and Appx1274 (describing the “basic idea” to “delay the triggering of a reordering procedure … in case the receiver entity receives a data packet being out of the sequence order”). The RLC receiver with a delay timer is Sachs’ teaching for a novel solution. Sachs uses Figures 4 and 5 as examples to show Sachs’ RLC receiver with a delay timer in action. The receiver does not and cannot ***control*** its receipt of PDUs, and the scenarios illustrated in Figures 4 and 5 merely depict examples in which a PDU is missing and either arrives late (because it arrived out of order) or does not arrive at all. The PDUs are merely the ***stimuli*** to which the RLC receiver responds. The Board similarly found and described the PDUs as “a set of stimuli” in its analysis of the ’396 patent. *See* Appx16. Sisvel’s attempt to belatedly recast Figures 4 and 5 should be rejected.

### e. Sachs Discloses the "Same" System

For its fifth argument, Sisvel tries to dismiss Figures 4 and 5 as merely "shar[ing] a couple similarities." RB at 40. But Sachs clearly describes the only difference between Figures 4 and 5: "***The difference*** is that the PDUs 3 and 4 are transmitted over the link." Appx1280(14:6-10) (emphasis added). In other words, and as already explained, Sachs does not identify a single difference between the ***receiver system*** depicted in Figures 4 and 5. Rather, the figures illustrate how the same receiver system responds to different ***scenarios***, including one in which the missing data packets (*i.e.*, PDUs) ***do*** or ***don't*** arrive before the timer expires.

To use Sisvel's own car analogy (RB at 40), Sachs discloses a car with a gas pedal. In a first figure, the car sits idle at a red light. And in the second figure, the car drives forward when the light turns green. There is no difference in the car, only in the light. The car certainly does not become "different and incompatible" with itself when the light changes, nor does it become two separate cars. Going one step further, the missing PDUs are akin to traffic lights in this analogy because they are external stimuli outside the control of the receiver (or car) that dictate whether the timer runs to expiration or is stopped (or whether the car drives forward or sits idle). Sisvel has no credible argument that the receiver has changed. It has not. It is the same receiver shown in two scenarios.

Sisvel argues that Sachs' explanation that Figure 4 is "similar" to Figure 5 does not mean the "same" "as a matter of basic grammar and logic," pointing only to its own declarant's deposition testimony.[1] BB at 41. But, when pressed, Sisvel's declarant, like Sisvel, could not point to a single purported difference in the receiver of Figures 4 and 5. He instead ***admitted*** that Figures 4 and 5 merely show the ***same*** system in which the timer responds to the different PDU "examples":

> Q. What is the difference in the system, not in the received PDUs?
>
> A. In ***the*** system, the timer is not stopped in the first embodiment, the timer is stopped in the second embodiment. ***There are two different examples of how the system is going to operate as it receives its PDUs***.

Appx3113(134:14-135:1) (emphasis added). Sisvel denies that its declarant made this admission (RB at 41), but this is exactly what he testified: question and answer verbatim. *See also* BB46 n.13 (pointing to same language).

#### f. Inconsistent Testimony from Sisvel's Declarant Cannot Overcome Sachs' Explicit Disclosures

Sixth, Sisvel accuses Appellants of "draw[ing] spurious distinctions" to "confuse the record." RB at 41. And Sisvel then proceeds to curate carefully selected fragments from the testimony of its declarant that it now claims rehabilitates

[1] Appellants separately address the lack of qualifications of Sisvel's declarant in Section II.C, *infra*.

his admission that Figures 4 and 5 "are two different examples of how the system is going to operate as it receives its PDUs." *Id.*

Setting aside the inaccuracy of the impression created by Sisvel's cherry-picking, and setting aside that Mr. Bates' testimony is not relevant to the knowledge of a POSITA because he is not one (*see* §II.C., *infra*), it is too late for Sisvel to try to create a new record on appeal on these issues. Sachs' disclosures are clear. Moreover, the only testimony from a POSITA in the record below (*i.e.*, from Appellants' expert) was clear that Figures 4 and 5 illustrate the same RLC receiver responding to PDUs arriving in a different sequence. Appx1168-1173(¶¶149-155) (walking through the examples in Figures 4 and 5 "for ***the receiver***"); *see also* Appx1181-1183(¶¶171-174) (walking through Figures 4 and 5 "side-by-side to also visually illustrate Sachs' teaching that the receiver's receipt of the missing data blocks causes the timer to be stopped").

Sisvel further argues that its position each embodiment must be considered a "single disclosed system" is supported by the MPEP, referring specifically to Section 608.01(p). While it goes without saying that the MPEP is not binding or even persuasive authority before the Court, the section on which Sisvel relies here is not relevant to the issues in this appeal. That section is titled "Completeness of Specification" and discusses the obligation of newly-filed applications to disclose a claimed invention with clarity. *See* MPEP, § 608.01(p) (available at

https://www.uspto.gov/web/offices/pac/mpep/s608.html#d0e42440). MPEP Section 608.01(p) does not purport to explain the appropriate interpretation or scope of prior art disclosures. And Section 608.01(p) does not "explain[] that an embodiment is 'an example of the invention'"; the paragraph Sisvel cites instead refers to an "embodiment ***or*** example of the invention." *Compare* MPEP, § 608.01(p) (available at https://www.uspto.gov/web/offices/pac/mpep/s608.html#d0e42440) *with* RB at 42 (purporting to quote MPEP § 608.01(p) as stating that an embodiment is "an example of the invention").[2] More importantly, Sisvel's position cannot be reconciled with the Court's rule that prior art should not be limited to a particular embodiment. *See, e.g.*, *Hayward*, 814 F. App'x at 595-96; *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1344 (Fed. Cir. 2016); *Belden*, 805 F.3d at 1076; *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375-76 (Fed. Cir. 2005).

---

[2] Sisvel also cites *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 405 (Fed. Cir. 2018), without explanation, for the proposition that "[p]rior art that must be modified to meet the disputed claim limitation does not anticipate the claim." RB at 42. *Enplas* involved a prior art reference that "could have been modified" to include a required limitation. *Id*. Sisvel has pointed to no modifications that would be required here, however, and the RLC receiver of Figures 4 and 5 already includes the disclosed delay timer. There is simply no necessity to combine limitations of the same system.

#### g. Sisvel Argues that Sachs Is Missing Elements but Does Not Say What They Are

In its seventh argument, Sisvel takes issue with Appellants' explanation that the Board "apparently agree[d] that each element of the challenged claims is found in Sachs." RB at 42 (citing BB at 41). Appellants refer back to their detailed explanation of the Final Written Decision. BB at 30-35. As already explained, the Board found that Sachs anticipated claims 1-2 and 6-8. Appx43. The Board declined to similarly invalidate dependent claims 3-5 and 9-10—not because Sachs failed to disclose those additional limitations—but rather because the Board refused to consider Sachs' detailed teachings across Figures 4-7 together, failed to address each of Appellants' arguments, and for other bases addressed in Appellants' appeal. *See* Appx22-27 (claim 3), Appx27-29 (claims 4 and 9), Appx29-31 (claims 5 and 10). Sisvel tacitly concedes as much by failing to point to any element of the challenged dependent claims that is not present in Sachs. RB at 42. Notably, Sachs expressly discloses detecting a missing data packet and detecting receipt of a missing data packet. *See, e.g.*, Appx1268(2:17-19) ("The transmission errors are detected by searching for gaps in the sequence numbers of the received PDUs on the receiver side."); Appx1280(14:10-12). So, however worded, Sachs discloses dependent claims 3-5 and 9-10.

Sisvel instead claims only that Sachs would require "picking, choosing, and combining various disclosures" without explaining which aspects of the RLC system

purportedly come from which figure. *Id.* (quoting *Net MoneyIN*, 545 F.3d at 1371). That argument is addressed above. *See, supra*, §II.A.1.

**h. Appellants Never "Forfeited" Any Anticipation or Obviousness Arguments**

Eighth, Sisvel returns to a variation of its forfeiture argument. RB at 43. This time, Sisvel plucks some of this Court's language from a prior decision and elevates that language to the status of magic words: Sisvel claims that Appellants forfeited all arguments as to the appealed dependent claims because they failed to argue before the Board that a POSITA would be able to "at once envisage" the disclosures of Figures 4 and 5 in the proceedings below. *See Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d at 1381 ("[A] reference can anticipate a claim even if it does not expressly spell out all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination.") (alteration incorporated).

Sisvel is wrong for several reasons. First, there is no requirement that a petitioner parrot the exact words "at once envisage" to preserve the argument that the Board must correctly apply the law of anticipation and obviousness. Appellants presented arguments and expert testimony on Sachs as both an anticipatory reference and as an obviousness reference. *See, e.g.*, Appx244 (Ground II is Sachs as a standalone § 103 reference); Appx270-289 (presenting Grounds I and II); Appx1121-1143(¶¶54-96) (detailed explanation of relevant knowledge of a

POSITA); Appx1114(¶38); Appx1165(¶142); Appx1185(¶177). Appellants' expert, having explained Sachs' disclosures and the knowledge of a POSITA, opined that a POSITA would have understood each limitation of the challenged claims to be anticipated, or at least obvious in view of Sachs. It is not clear what more Sisvel claims is required to preserve the point for appeal.

Next, and contrary to Sisvel's argument, Appellants ***did*** explicitly rely on *Kennametal* below, in their Reply. *See, e.g.*, Appx627 (citing *Kennametal*); Appx629 (same); Appx631 (same). To the extent Sisvel takes issue with Appellants discussing *Kennametal* for the first time in their Reply, Appellants are permitted under 37 C.F.R. § 42.23(b) to respond to arguments raised in the institution decision and Sisvel's response, and the Board made no determination that Appellants' reliance on *Kennametal* was untimely, especially where Appellants' expert had gone to such lengths to provide detailed testimony on the knowledge of a POSITA.

Third, Sisvel's reliance on *Intelligent Bio-Systems* here is also misplaced, once again, because there is no dispute that Appellants relied on and provided evidence on the collective teachings of Figures 4 and 5 in its Petition and, more specifically, on *Kennametal*, in the proceeding below. *See* RB at 43 (admitting that *Kennametal* was argued in Appellants' Reply). In short, as much as Sisvel may want the Court to disregard its own authority that a prior art reference need not "expressly spell out" the claimed invention in the same way as an asserted patent, it cannot.

#### i. Sisvel's Harmless Error Argument Ignores Dependent Claims 3-5 and 9-10

The last of Sisvel's nine kitchen-sink arguments is that the Board's refusal to consider Sachs' teachings across Figures 4 and 5 was a harmless error—or, rather, that Appellants failed to demonstrate it "was not harmless error." RB at 43-44. This argument makes no sense. Sisvel's claims survived only because of the Board's errors, so the Board's error was anything but harmless.

Additionally, as part of this argument, Sisvel strangely points to the Board's conclusion that elements 1[c] and 1[d] were mutually exclusive to find claim 1 invalid to support this argument (even as it simultaneously argues this was an error in its own appeal). RB at 44. It is difficult to understand how this point relates to the issue of harmless error because Appellants are not appealing the Board's invalidation of claim 1; Appellants are appealing the Board's failure to invalidate dependent claims 3-5 and 9-10. BB at 40. And, as Appellants already explained, the Board's refusal to consider the teachings of Figures 4 and 5 (and Figures 6 and 7, for that matter) together led the Board to incorrectly reject Appellants' invalidity arguments as to dependent claims 3 (BB at 33-34), 4-5, and 9-10 (BB at 34-35). Appellants were clear that this was the basis for their appeal. *See, e.g.*, BB at 40. There is no procedural defect here, whether this is considered with the "harmless error" argument or separate from it.

### 3. The Addition of Another, Unclaimed Variable to Sachs' Figures 6 and 7 Does Not Make Them Different Prior Art Disclosures

Sisvel repeats itself with an abbreviated variation of its arguments from Sachs' Figures 4 and 5 for Sachs' Figures 6 and 7. Each of its arguments again fails for similar reasons to those described above.

First, Appellants have not and cannot "forfeit" arguments that Sisvel admits were presented in the Petition (and also supported by detailed expert testimony that Sisvel does not mention). RB at 44; *see also* Appx1199-1202(¶¶205-207) (Figure 6); Appx1203-1205(¶¶212-214) (Figure 6); Appx1208-1209(¶219) (Figure 6); Appx1213-1214(¶¶227-228) (Figure 7). *BlephEx, LLC v. Myco Industries*, 24 F.4th 1391, 1401 (Fed. Cir. 2022), does not support Sisvel's argument, either. In *BlephEx*, an appellant raised an argument for the first time on appeal in its reply brief. The Court appropriately found that the argument was not preserved because it was not presented to the district court. *Id.* at 1400. That is not the case here, and Sisvel does not even attempt to explain how *BlephEx* supports its attempt to exclude arguments that Appellants presented in the proceedings below.

Sisvel also selectively presents extraneous features to argue that there are differences in Figures 6 and 7. RB at 45-46. Appellants have already explained that Sachs Figures 6 and 7 disclose the same RLC receiver with a delay timer ***with an additional state variable***. BB at 24-29. There is no surprise revelation here. *See* RB at 46. Likewise, it is not clear why Sisvel's argument that Figures 6 and 7 show

PDUs sent in pairs is relevant to the issues in this appeal. As already explained in connection with Figures 4 and 5, Sachs discloses an RLC receiver with a delay timer precisely so it can adapt to the receipt PDUs that it cannot predict or control. The PDUs are not the disclosed system, they are merely the stimuli. The claims of the ’396 patent never purport to draw a patentable distinction between whether the PDUs are received individually or in pairs; Sisvel never explains why it should be able to exclude or overlook Sachs’ collective teachings on the basis that Sachs provides more enabling details and disclosures than the challenged claims.

Sisvel does not point to any other purported differences relevant to Figures 6 and 7, so the question before the Court reduces to whether the addition of a state variable with an algorithm—an unclaimed feature—means that the teachings of Figures 6 and 7 cannot be considered together with the teachings of Figures 4 and 5. Appellants previously presented the Court’s authority in *Victaulic* and *Orion IP* on this issue. BB at 44-45 (discussing *Victaulic Co. v. Iancu*, 753 F. App’x 895, 900 (Fed. Cir. 2018), and *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 977 (Fed. Cir. 2010)). Sisvel never addresses *Victaulic* specific to Figures 6 and 7, but, as already explained above, Sachs expressly discloses the state variable as an ***additional***, unclaimed feature to its disclosed RLC receiver with a delay timer. Sisvel never explains why an additional, unclaimed feature is relevant to the validity analysis here. Likewise, Sisvel never even acknowledges or responds to *Orion IP*,

where the Court rejected attempts to distinguish the prior art on the basis that it disclosed additional features beyond those claimed in the challenged patent. 605 F.3d at 977; *see also Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1319-20 (Fed. Cir. 2009) (finding a method patent anticipated where a plaintiff attempted to distinguish the prior art based on disclosed functions "in addition" to those claimed by the patent). The mere addition of another, unclaimed feature in a receiver does not simply render that teaching irrelevant.

Sisvel repeats its same "magic words" argument that Appellants waived their ability to demonstrate that a POSITA would "at once envisage" Sachs' disclosures because they did not quote that language from *Kennametal* in the Petition. 780 F.3d at 1381 (Fed. Cir. 2015). But Appellants and their expert ***did*** rely on and present the ***collective*** teachings of Sachs, including specifically Figures 6 and 7, in the proceedings below both as an anticipatory reference and as a standalone obviousness reference that discloses each and every limitation of the challenged claims. *See, e.g.*, Appx1199-1202(¶¶205-207) (Figure 6); Appx1203-1205(¶¶212-214) (Figure 6); Appx1208-1209(¶219) (Figure 6); Appx1213-1214(¶¶227-228) (Figure 7). In addition, Appellants' technical expert provided testimony as to a POSITA's understanding of Sachs (Appx1165-1174(¶¶143-156)) and noted that Sachs' additional teachings of a state variable were extraneous. Appx1173-1174(¶156). Sisvel says that this is not enough and that he should have also provided analysis of

the unclaimed state variable in Figures 6 and 7. Well, he did. Appx1201-1202(¶207) (explaining that state variable X1 is 1 in Figure 6); Appx1205(¶214) (similar). And, as his testimony shows, the state variable—an unclaimed additional feature—did not interfere with the timer or interfere with Sachs' disclosure of the claimed method. *See id.* Sisvel similarly complains that Sachs' disclosure of status reports are "equally unclear" across Figures 4-7 because "they are delayed through the use of the state variable X1." RB at 47. But Sachs discloses (and the '396 patent claims) ***delaying*** transmission of a status report that serves as a retransmission request; the addition of an optional delay feature in Figures 6 and 7 does not alter the underlying teachings of Sachs. *Onion IP*, 605 F.3d at 977. It would invite chaos for a patent owner to overcome anticipatory prior art on the basis that it had a broader disclosure. In short, Sisvel complains a lot about Sachs' additional teachings but presents no evidence that they obviate the evidence of a POSITA's understanding of Sachs on the issues relevant to the challenged '396 claims presented below.

#### 4. No Motivation to Combine Sachs' Teachings Is Needed

Sisvel accuses Appellants of confusing "combinability" issues of an anticipation analysis with the "motivation to combine" of an obviousness analysis. RB at 49. Sisvel is wrong. It is the Board that determined for each of claims 3-5 and 9-10, without explanation, that Appellants failed to demonstrate how it "intend[ed] to combine" Sachs' figures and "why a POSITA would have been

motivated to combine" those figures. Appx26; Appx29; Appx31. As already explained, there is ***no need*** to "combine" Figures 4-7 in the way that this approach suggests for either anticipation or obviousness because they are all part and parcel of a single, interrelated disclosures. All of the figures relevant here disclose ***the same RLC entity*** with a delay timer, with Figures 6 and 7 including an additional state variable feature not relevant here. The only difference is the randomly-received PDUs they are receiving, which are discussed to show how the delay timer operates. No "combinability" must be proven; Sachs presents the same prior art system from different angles. To the extent Sisvel attempts to draw from *Chamberlain* for a distinction between "combinability" for anticipation analysis and "motivation to combine" for an obviousness analysis (although it is not clear that this is Sisvel's argument), it is mistaken. *Chamberlain* stands for the proposition that there is no "blanket rule" for "embodiments" and whether they can be considered together. *Id.* at 1350. "[T]he relevant question is whether the reference is sufficiently clear in disclosing the combinability of those elements that a skilled artisan would 'at once envisage' the claimed combination." *Id.* In other words, *Chamberlain* starts from the premise of different systems that must be combined, which is not the situation here. As already explained, ***no*** combinability showing is necessary for Sachs' Figures 4-7. Those figures all separately possess the same necessary limitations of the claimed system because those figures all show the same Sachs system.

But even accepting that there was a need to combine Sachs' figures using the approach that Sisvel may be suggesting, whether in the context of anticipation or obviousness, it is not clear how or why you would or could combine the same RLC receiver with itself. This simply makes no sense. In short, the Board erred by requiring a combinability and motivation to combine side-by-side figures of the same RLC receiver in a single prior art reference. There is no need to demonstrate a motivation to combine examples of the ***same disclosure*** (the RLC receiver with a delay timer) in the same prior art reference.[3] It is part of the same teaching, as already explained above, and the Court has refused previous attempts to similarly "unduly dissect[] prior art references into collections of individual elements, requiring a party showing obviousness to re-do the work already done in the prior art reference." *Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1352 (Fed. Cir. 2020). To the contrary, "[t]he claimed invention and an invention in the prior art must both be analyzed as a whole for the same reason: an invention is more than the sum of its individual elements." *Id*. *Kennametal* and its "at once envisage" test

---

[3] Indeed, looking for a motivation to combine here leaves one scratching their head. For instance, litigants often find a motivation to combine in the fact that one prior art reference cites or cross-references another or in the fact that two separate references share an author or are directed to the same problems or field of use. How one would apply this type of analysis to ***a single reference*** is anyone's guess. That is even more so the case here when they are directed to the same RLC system; no one figure is missing a limitation, rather, the figures show the system performing in different scenarios or modes.

is one way of articulating the approach that this Court has adopted, and Sisvel's proposed "combinability" and "motivation to combine" approach simply cannot be reconciled with these precedents. In short, Sisvel's invitation to divide Sachs' teachings into "at least six" different disclosures should be similarly rejected.

### B. Sisvel Cannot Exculpate the Board for Its Failure to Consider ***all*** Arguments Presented in the Petition

Sisvel attempts to blame Appellants for the Board's error in failing to even consider Appellants' alternative arguments presented below for dependent claims 3-5 and 9-10. RB at 50. But Sisvel cannot absolve the Board of its responsibility to consider all of the arguments and evidence presented.

For instance, Sisvel defends the Final Written Decision, saying that the "Board did not fail to provide any substantive analysis of its rejection of Ground II." RB at 51-52. But Sisvel cannot cite any part in the Final Written Decision where the Board conducts an actual obviousness analysis for dependent claims 3-5 and 9-10. That is because that analysis is wholly missing. Instead, the Board performed its anticipation analysis for each dependent claim (picking and choosing only certain figures and evidence to consider) and then concluded each such discussion with a boilerplate statement stating (incorrectly) that Appellants' arguments are unclear. Appx26-27; Appx29 (same); Appx31 (same). Appellants presented detailed evidence and testimony on the understanding and knowledge of a POSITA (Appx1121-1143(¶¶54-96) (state of the art from perspective of POSITA);

Appx1116-1120(¶¶45-51) (level of skill in the art)), a POSITA's understanding of Sachs' teachings (Appx1165-1174(¶¶143-156)), and a POSITA's understanding of Sachs' disclosure of each of the limitations of the challenged claims (Appx1174-1216(¶¶158-236)). The Board's cursory conclusion fails to provide any substantive analysis of the evidence presented and is reason enough for reversal or at least remand. *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002).

Sisvel attempts to fill in the Board's missing obviousness analysis by pointing to the Board's criticism of Figure 6 for purposes of anticipation. RB at 51. But the Board did not say any of this in its actual obviousness analysis, and as already explained (BB at 56-61), this logic could not have been part of any correct analysis because ***Figure 6 was not necessary*** to Appellants' invalidity challenge to dependent claims 3-5 and 9-10. Figure 6 was presented because it shows the same RLC receiver of Figures 4 and 5 (with an additional, unclaimed state variable) detecting missing PDUs where the PDUs arrive in a different random order, but there is nothing present in the disclosed system of Figure 6 for detecting missing PDUs that was not already taught in Sachs' overall teachings and Figures 4 and 5.

Sisvel also argues—now for a third time—that the Petition and supporting evidence are deficient for failing to specifically assert that a POSITA would "at once envisage" the claimed combination. RB at 53. As previously explained, neither Appellants nor their expert are required to use any specific "magic words" to explain

the law of anticipation to the Board. The law on anticipation is the law, and Appellants clearly argued that the dependent claims were invalid as anticipated.

Sisvel next asks the Court to read the knowledge and common sense of a POSITA out of an obviousness analysis, too. RB at 54. This attempt to edge out the educated and experienced POSITA is all the more extraordinary in view of the extensive evidence that Appellants presented on a POSITA's knowledge. Specifically, Appellants' expert provided a 22-page summary of the state of the art from the perspective of a POSITA at the relevant date, carefully detailing the state of telecommunications, telecommunications equipment and protocols stacks, and the commonly used transmission and retransmission protocols and schemes. Appx1121-1143(¶¶54-96) (state of the art from perspective of POSITA). Sisvel's claim that the Board lacked the necessary evidence and explanation of the knowledge of a POSITA and how it would understand Sachs' teachings is demonstrably false.

Finally, Sisvel turns to dependent claims 3-5 and 9-10 to try to itself remedy the Board's failure to consider each of Appellants' arguments. RB at 55-62. Each of these claims is directed to further limiting how "the at least one data block is detected as missed" (claims 3, 4, 9) or when the timer is stopped because the missing PDU has arrived (claims 5, 10). In other words, each of these dependent claims merely describes the basic logic by which a numbered PDU is detected as missing

in a sequence of numbers or as having arrived, *i.e.*, describing a gap in the numerical sequence. Appellants' expert provided testimony that "identifying whether there is a gap in a sequence of integers, *e.g.*, PDU numbers, 1, 2, 3, etc., would not only be obvious to a POSITA but ***self-evident to any non-POSITA*** because it only requires a basic knowledge of number sequencing," *i.e.*, the ability to count. Appx1195(¶198) (emphasis added). Appellants' expert further testified that these limitations would be "***trivially obvious*** to a POSITA."[4] *Id.* (emphasis added); *see also* Appx1202-1203(¶¶210-211) (claim 3), Appx1206-1207(¶217) (claims 4 and 9). Sisvel cannot point to the Board's consideration of any of this evidence because it did not; Sisvel instead argues this evidence was not enough because "it does not explain how specifically a POSITA would combine this background knowledge [of numbers and how to count] and why he would have been motivated to do that." RB at 54. In short, Sisvel now argues that a POSITA, already possessing a prior art

[4] To its credit, Sisvel did not attempt to demonstrate any purported novelty of the dependent claims either in the proceedings below or now. Instead, Sisvel attempts to defend these "trivially obvious" claims by pointing out that its declarant testified that he did not "see anything novel there" about the manner in which the claims detect a gap, not the dependent claims themselves. RB at 55 n.5. But that is exactly what claims 3, 4, and 9 are directed to, describing "the at least one data block is detected as missed," *i.e.*, describing detection of a gap in a numerical sequence. Appx209(16:58-62) (claim 3); Appx209(16:63-67) (claim 4); Appx210(18:9-13) (claim 9). And Claims 5 and 9 are merely directed to describing receipt of the missing sequence number data block. Appx210(17:1-5) (claim 5); Appx210(18:14-18). Sisvel's argument, in short, highlights a difference without distinction.

reference that discloses detecting a missing and arriving PDU, would need additional ***explanation*** and ***motivation to combine*** her understanding of numbers and counting to those teachings. Appellants' expert shows the multiple ways in which a POSITA would have understood that Sachs disclosed detecting a missing or recognizing an arriving PDU. Appx1168-1173(¶¶147-154) ("searching for gaps in the sequence numbers" and examples); *see also* Appx1195-1202(¶¶198-207). Appellants respectfully request that the Court put an end to such a nonsensical argument.

Sisvel's claim-by-claim attempt to perform the Board's analysis fails as well. *See* RB at 55-62. Sisvel attempts to recharacterize the Board's analysis of the dependent claims as "correct" and "well-supported" (RB at 55-59), but Sisvel does not deny that the Board failed to consider each of Appellants' arguments and sources of evidence for this claim. Sisvel instead, unsurprisingly, disagrees with what the evidence shows. But Sisvel is not the factfinder. The Board is. And Appellants are entitled to consideration and analysis by the Board. Of note, Sisvel ignores Sachs' ***collective teachings*** for detecting a gap, which is specifically ***not*** limited to three lines of text. *See* RB at 56. Sisvel also parrots the Board that claim 3 is different from claim 2 but never points to any difference between the claims other than the language used to describe detecting a gap in the PDUs. *Id.* Sisvel then attempts to explain away the Board's cryptic need for claim 3 to mean "something more" by reverting to Figure 6. RB at 57. Sisvel only proves Appellants' point because

Appellants are appealing the Board's failure to consider Sachs' ***other*** teachings, not Figure 6. BB at 57. Finally, Sisvel attempts to read Appellants' detailed and corroborated explanation of Figure 4 and 5's teachings out of its Petition altogether by claiming there was no explanation from which the Board could understand its teachings for detecting a missing gap. RB at 57. But Appellants and its expert did explain each of the figures thoroughly in the Petition and expert declaration and reasonably referred back to that discussion. *See, e.g.*, Appx260-263; Appx1168-1173(¶¶149-157).

### C. Sisvel Cannot Resurrect Its Declarant's Fatal Lack of Education and Relevant Expertise on Appeal

The Board erred in relying on testimony from Sisvel's declarant, even though he did not qualify as a POSITA. Appellants were harmed by this error. Sisvel's belated defense of its declarant's credentials cannot save him or the decision that the Board made in reliance upon his testimony.

#### 1. The Board's Reliance on Unqualified Testimony to Conclude Appellants Had Not Met Their Burden for Dependent Claims 3-5 and 9-10 Is Not a Harmless Error

As a preliminary matter, Appellants have already demonstrated the harm from the Board's reliance on Mr. Bates' testimony in their opening appeal brief. Specifically, Appellants pointed to the Board's repeated reliance on, and weight given to, the testimony of Sisvel's declarant throughout its analysis of dependent claims 3-5 and 9-10, which resulted in the Board erroneously concluding that

Appellants had not demonstrated the invalidity of these claims. BB at 63 (citing to exemplary instances at Appx8, Appx17-19, Appx21-24, Appx26, Appx28, Appx30, and Appx38). For example, the Board declined to decide whether Figures 4 and 5 of Sachs are directed to the same embodiment after discussing and citing to Mr. Bates' testimony and Sisvel's arguments about it. Appx18-19 (citing Sisvel's Response and Mr. Bates' testimony at Appx3212(¶30)). For dependent claim 3, the Board directly credits Mr. Bates: "Patent Owner's Declarant testifies that 'Petitioners do not demonstrate that the T_reorder timer performs the same steps as the timers in either Figure 4 or 5,' '[n]or do the Petitioners explain how Figure 6 relates to Figures 4 and 5.'" Appx24 (quoting Appx3213(¶35)); *see also* Appx26 (citing Appx3212-3213(¶33)). The Board further cited to Mr. Bates' bare testimony in connection with its analysis of dependent claims 4 and 9 (Appx28 (citing Appx3214(¶37)) and dependent claims 5 and 10 (Appx30 (citing Appx3215(¶40)). Appellants pointed to each of these instances in its principal brief; there is no failure to demonstrate this error caused harm.

### 2. An Unqualified Declarant May Not Testify as to Anticipation or Its Underlying Questions

Sisvel boldly, but incorrectly, claims "[t]here is nothing that requires an expert to be a POSITA to offer helpful testimony to a fact-finder." RB at 63. In fact, however, an individual must qualify as at least a person of ordinary skill in the art to opine on anticipation, obviousness, or their factual underpinnings. As previously

discussed (BB at 63), *Sundance, Inc. v. DeMonte Fabricating Ltd.* stands for the uncontroversial proposition that a witness ***must*** be qualified in the pertinent art to testify as an expert on anticipation and its underlying issues. 550 F.3d 1356, 1364 (Fed. Cir. 2008) ("[A] witness not qualified in the pertinent art may not testify as an expert as to anticipation, or any of [its] underlying questions …."). Sisvel does not acknowledge, let alone respond to, *Sundance*. Nor can it. It is black letter law that a witness must be qualified as an expert by knowledge, skill expertise, training, or education. Fed. R. Evid. 702. In patent cases, that means that an individual who does not qualify as a POSITA in the pertinent art may not testify as an expert on anticipation or obviousness. *Sundance*, 550 F.3d at 1364.

Sisvel instead points to two different cases to support its claim that an expert witness does not need to be a POSITA. But the first is not on point, and the second only reinforces Appellants' point. First, *SEB* involved an individual who testified as to technical issues in a case involving deep fryer design. *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1372-73 (Fed. Cir. 2010), *aff'd sub nom.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). *SEB* explained that this individual had a technical degree and experience in the use and selection of polymer materials, which were at issue in the case, and emphasized that he did ***not*** opine on infringement, but rather the importance of selecting materials and the spacing between components. The *SEB* court found no abuse of discretion for the court to

allow that testimony because there was "an adequate relationship between his experience and the claimed invention." *Id.* at 1373. In other words, the witness had a specialized technical knowledge and provided testimony within that area, ***not*** on the ultimate question of infringement. As explained in greater detail below, an "adequate relationship" does not exist here, however. Mr. Bates' experience, although extensive, was in laying out physical telecommunications equipment, not in designing the specific transmission protocols used ***inside*** that physical equipment.

Second, Sisvel's reliance on *Kyocera Senco Indus. Tools, Inc. v. ITC*, 22 F.4th 1369 (Fed. Cir. 2022), reinforces Appellants' point, rather than supporting Sisvel's. *See* RB at 63. *Kyocera* first states, consistent with Appellants' arguments, that "[t]o offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art. ***Without that skill, the witness' opinions are neither relevant nor reliable.***" 22 F.4th at 1376-77 (emphasis added). Because the proposed expert lacked the required experience for the level of ordinary skill in the art, *Kyocera* found it was an abuse of discretion to admit testimony "on any issue that is analyzed through the lens of an ordinarily skilled artisan." *Id*. at 1377-78. Here, the Board considered Mr. Bates' testimony on issues of invalidity and its factual underpinnings, all of which are evaluated through the lens of a POSITA. *Kyocera*

thus confirms that the Board's admission and reliance on Mr. Bates' testimony was legal error.

### 3. Sisvel's Declarant Did Not Meet the Level of Ordinary Skill in the Art

There is also no dispute that the Board adopted Appellants' POSITA definition, a ruling that Sisvel does not appeal, and that Mr. Bates does ***not*** qualify as a POSITA under that definition. As discussed above, there is no precedent that would permit Mr. Bates to testify on issues for which he does not qualify as a POSITA.

The Board's determination on level of skill in the art requires two components:

> A POSITA at or about the time of the alleged invention (January 5, 2006) would have had [1] a degree in electrical engineering or a similar discipline, with [2] at least three years of relevant industry or research experience, including experience designing or implementing wireless radio systems for data transmission and retransmission.

Appx8 (adopting Appellants' proposed definition).[5]

---

[5] Appellants note that Mr. Bates did not meet the requirements under Sisvel's proposed definition either. Sisvel's proposed definition had similarly required a technical degree—a bachelor's degree in electrical engineering, computer sciences, or telecommunications—which Mr. Bates does not have. *See* Appx8. Sisvel had also proposed substantial "practical experience in the field" could substitute for education, but Sisvel did not specify the type of experience or field of practice, presumably recognizing that Mr. Bates would not qualify in the transmission protocol field of art of the '396 patent.

Mr. Bates does not meet either requirement of the Board's level of skill in the art. He (1) does not possess any technical degree, let alone a degree in electrical engineering or a similar discipline. *See, e.g.*, Appx617-618; Appx3138(¶7) (Bachelor's degree in business management with coursework towards MBA); Appx3090 (43:12-22) (same). Sisvel belatedly argues on appeal that Mr. Bates was a "pioneer" and points to his military service in the 1960s (when he trained on prior art radio technology that predated the LTE technologies at issue here by decades). RB at 64. Appellants do not intend to disparage Mr. Bates' business education or military experience, but neither of these meets the required education under the Board's defined level of skill in the art.

Second, Mr. Bates also lacks (2) "relevant industry or research experience, including experience ***designing or implementing wireless radio systems for data transmission and retransmission***." Appx8 (emphasis added). The question is not whether Mr. Bates has any, or even extensive, experience in the broader field of telecommunications. The question is whether he has the required experience in the particular systems for transmitting and retransmitting data packets relevant to the claimed invention of the '396 patent. And he does not. Mr. Bates testified that he has extensive experience laying out and installing the physical equipment for telecommunications networks, but he has never designed the channels and methods for transmitting and retransmitting data in wireless networks relevant to the claimed

invention of the '396 patent. Appx3091(45:18-46:16) ("No, I haven't been designing those channels or whatever…."); Appx3091(46:12-16) ("Q: So referring more specifically, though, to designing the particular channels and methods for transmitting and retransmitting data in a cellular network, have you ever worked in designing that? A: No."). That means that even if the Board had determined that experience could make up for education—and it did not—Mr. Bates' experience would not qualify him to testify either.

Mr. Bates cannot testify to the level of ordinary skill of art in this proceeding because he does not qualify as one of ordinary skill in the art. *See Kyocera*, 22 F.4th at 1377-78. This is not a shortcoming by Mr. Bates. This is a shortcoming by Sisvel for not identifying a potential witness with the relevant and necessary experience for this proceeding.

## III. CROSS-APPELLEES' RESPONSE

Sisvel appeals the Board's determination that claims 1-2 and 6-8 are invalid. While Sisvel organizes its appeal into two grounds, it actually makes three distinct arguments: (1) Sisvel claims that the Board incorrectly applied the Court's conditionality case law; (2) Sisvel argues the Board lacked substantial evidence for its factual determination regarding Sachs' T_reorder timer teachings (although it makes a weak attempt to frame this as a legal error); and (3) Sisvel oddly urges the Court to adopt the dissent's view that the claims are "nonsensical" and therefore

invalid as indefinite (and beyond the Board's purview). As explained below, Sisvel should not be permitted to stretch the Court's precedent on conditional limitations in a manner that would wrongly undermine the Board's thoughtful analysis of the mutually-exclusive standalone methods claimed by the '396 patent. Moreover, Sisvel fails to demonstrate that the Board's careful analysis of Sachs' T_reorder timer was not supported by substantial evidence. And, finally, Sisvel's suggestion that it should win this appeal because its claims are indefinite as "nonsensical" is hardly a ringing endorsement of the '396 patent here, but Sisvel's proposed approach should be rejected as unnecessary at this juncture because the Board did not find its invalidity analysis impossibly frustrated. In short, none of these arguments salvage the invalid claims of the '396 patent; indeed, the last one in particular simply reinforces the extent of the problems with the claims involved here.

## A. The Board Applied the Correct Legal Standard for the Mutually-Exclusive Conditional Claims of the '396 Patent

### 1. Independent Claim 1 Is a Conditional Claim

Sisvel claims that the Board "committed legal error" when it relied on its own precedent, *Ex parte Schulhauser*, Appeal No. 2013-007847, 2016 WL 6277792 (PTAB Apr. 28, 2016), regarding conditional claims. RB at 65. But, in fact, the

Board ***never even mentioned*** *Schulhauser* in its Final Written Decision. *See generally* Appx16.[6]

Rather, the Board determined, without any reference to *Schulhauser*, that the ***mutually-exclusive*** limitations 1[c] and 1[d] ***cannot both be performed*** during performance of the claimed method:

> Petitioner persuasively responds that both limitations refer back to the single timer described in 1[b] and that limitations 1[c] and 1[d] are ***mutually exclusive: the timer either stops or expires, but it cannot do both while performing the method.*** According to Petitioner, it need therefore only demonstrate one of the mutually exclusive limitations, 1[c] or 1[d], in the prior art but contends that it nonetheless presents prior art that discloses both mutually-exclusive limitations in single references…. In order for Petitioner to prevail, it need only show one of these mutually-exclusive claim limitations to satisfy the claim, as it contends.

Appx16 (internal citations omitted) (emphasis added). This is not, therefore, a legal error of any sort; instead, it is a quintessential factual determination. Factual determinations are reviewed for substantial evidence, and a finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to

---

6 While it is not clear whether Sisvel intended to criticize the Board for purportedly following a precedential Board decision—that the Board never mentioned—that would not have been improper anyway. *Schulhauser* is not binding on this Court, of course, but that does not make it bad law.

support the finding. *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). That standard is clearly met here.

Setting aside the fact that the Board never stated that its determination relied on *Schulhauser*, it would not have been an error to rely on *Schulhauser* anyway. Sisvel is wrong when it claims "[t]his Court has previously called *Schulhauser* into question." RB at 65. The decision on which Sisvel relies instead went to considerable efforts to distinguish *Schulhauser* and the type of claim at issue here. *Hytera Comm'ns Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 216 (Fed. Cir. 2021).

In *Hytera*, the Court collected and reviewed its binding and persuasive precedent on conditional claims, as well as the Board's *Schulhauser* decision. *Id.* at 215-18. The Court first addressed an early precedent, *Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364 (Fed. Cir. 2010), which Sisvel claims also conflicts with *Schulhauser*. RB at 66. *Lincoln* was directed to an "even if" clause: a method claim that recited a payment step that occurred "even if the account value is exhausted before all payments have been made." *Hytera*, 841 F. App'x at 215. The plaintiff in *Lincoln* had argued that this "even if" clause was contingent and that it was not therefore required to prove the clause was met by the accused system. *Lincoln* rejected this argument, having already explained that ***infringement*** requires showing that each step of the claimed method is performed. *Lincoln*, 609 F.3d at 1370. Moreover, as the *Hytera* court noted, the "even if" patent claim in

*Lincoln* was distinguishable from the patents under invalidity review in *Hytera* and *Schulhauser* because it did not "present[] two alternative conditions and described a response to each." *Hytera*, 841 F. App'x at 217. Sisvel's claim that "*Schulhauser* conflicts with this Court's precedential decision in *Lincoln*" is therefore contradicted by the Court itself, which distinguished *Schulhauser's* alternative conditions from *Lincoln's* "even if" clause.

Further contrary to Sisvel's arguments, *Hytera* never "called *Schulhauser* into question." *See* RB at 65. To the contrary, the *Hytera* court explicitly declined to comment on *Schulhauser* other than to distinguish the claim before it from *Schulhauser*. 841 F. App'x at 217-18. The Court explained that *Schulhauser* involved a distinguishable method claim that could be construed as alternative standalone method claims because the claims were complete upon finishing the conditional limitation. *Id.* at 217 ("In *Schulhauser*, nothing in the earlier steps of the claim suggested that the claimed method would be incomplete after the [conditional] triggering step. Thus, each alternative condition could reasonably be construed as a standalone method claim …."). The claim before the *Hytera* court was different; it instead included "a clear indication that the method requires performance of the 'selecting' step in response to each of the two alternative conditions." *Id.* The Court therefore distinguished the *Hytera* claim as "one method in which the response to either alternative condition in the 'selecting' step must be performed," whereas

*Schulhauser* had considered a claim comprised of "two distinct methods depending on the prerequisite conditions." *Id*. at 218.

As the Board already found, limitations 1[c] and 1[d] here are directed to mutually-exclusive methods, only one of which can be performed on the single timer described in limitation 1[b]: the started timer either stops or expires. It cannot do both. *See* Appx16. While Sisvel baldly claims that "the method would be incomplete after the first supposed conditional step" (RB at 66), it fails to explain how. The first, mutually exclusive option in limitation 1[c] specifies that the timer is stopped: "stopping the timer when the at least one data block is received from the transmitter." Appx209(16:46-49). Sisvel cannot and does not explain how or why the stopped timer would instead expire as required under limitation 1[d]: "transmitting the status report to the transmitter ***after the timer expires***." Appx209(16:50-53). Claim 1 either performs limitations 1[a], 1[b], and 1[c] if the missing PDU arrives ***or*** limitations 1[a], 1[b], and 1[c] if the missing PDU does not arrive—both of which are "standalone methods" complete upon performing limitation 1[c] or 1[d]. *See Hytera*, 841 F. App'x at 217. These are the "two distinct methods" contemplated as distinguishable by the Court in *Hytera*.

Sisvel alternatively further argued for the first time in its appeal that limitations 1[c] and 1[d] are ***both*** performed "in response to an alternative condition—receipt of the missing block while the timer is running." RB at 67. As

an initial matter, the Board already concluded that Sisvel "implicitly construe[d] claim limitation 1[c]" similar to Appellants, which would preclude this new claim construction argument. *See* Appx9. But even if Sisvel was not raising a new claim construction argument, its proposed interpretation of limitations 1[c] and 1[d] is nonsensical and requires that the single timer started in limitation 1[b] is first stopped in limitation 1[c] and then expires in 1[d]. *See* RB at 67; *see also* Appx3117(151:14-18) (Sisvel's declarant testifying that limitation 1[b] indicates a single timer).

Neither Sisvel nor its declarant have ever explained how a single timer can first be stopped and then also separately expire, and that impossibility is certainly not disclosed in the '396 patent. When pressed, Sisvel's declarant could only allude to the possibility of additional timers, despite admitting that limitations 1[c] and 1[d] both refer back to the ***single*** timer of limitation 1[b]. Appx3117(151:19-152:8); Appx3118(153:12-155:20). In short, Sisvel now urges a construction of claim 1 (and its identical system claim 8) that renders all claims of the '396 patent invalid as indefinite. *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366-67 (Fed. Cir. 2021) (holding asserted claims that "are nonsensical and require an impossibility" as indefinite as a matter of law under § 112, paragraph 2).[7] Appellants

---

[7] As discussed further below, it is unfortunate that the Board's limited scope of review encourages patent owners to advocate for indefinite constructions to evade the Board's review and invalidating prior art. *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275-76 (2016). An unscrupulous patent owner can

respectfully request that, if the Court considers Sisvel's new claim construction argument (discussed further in Section III.C, *infra*), that it address whether an invalidity review is nonetheless possible based on the '396 patent's disclosures. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813–14 (Fed. Cir. 2021) ("The indefiniteness of a limitation (here, a means-plus-function limitation) precludes a patentability determination only when the indefiniteness renders it logically impossible for the Board to reach such a decision."). Regardless, the Board's decision and claim 1 of the '396 patent both align with the type of *Schulhauser* claim the Court distinguished from its *Hytera* decision. The Board committed no legal error here.

### 2. The Board's Invalidity Determination for Independent Claim 8 Should Similarly Be Upheld

Independent claim 8 is identical to claim 1 except that it presents the claimed method as a receiver comprising an RLC entity and changes the limitation verb tenses. *See* Appx1158 (side-by-side annotated comparison of claims 1 and 8); Appx1158-1159 (explaining the claims are nearly identical); *see also* Appx20 (Board conclusion that claim 8 "performs substantially the same method recited in independent claim 1"). The Board therefore unsurprisingly found that claim 8 is

continue to assert indefinite claims that emerge from the IPR process until and unless a district court invests additional time and resources to make an indefiniteness determination and defers to the Board's findings on that front.

anticipated and rendered obvious "for reasons substantially similar to those set forth for independent claim 1." Appx20; RB at 72-73. Sisvel's arguments to the contrary are too little, too late.

As an initial matter, Sisvel failed to argue in the proceedings below—and therefore waived—any argument that claim 8 should be reviewed differently because it is framed such that the method of claim 1 is merely performed in a receiver. To the contrary, Sisvel's Response only addressed whether limitations 1[c] and 1[d] were conditional and presented no separate arguments as to claim 8. Appx512-517. Sisvel was cautioned that any arguments for patentability not raised in the response would be deemed waived. It should not now be able to raise a new argument that claim 8 must be subject to a separate review from claim 1 at this late stage. *Finjan, Inc. v. Cisco Sys., Inc.*, 837 F. App'x 799, 809 (Fed. Cir. 2020); *see also* Appx434 ("Patent Owner is cautioned that any arguments not raised in the response may be deemed waived."). Sisvel untimely mentioned claim limitations 8[c] and 8[d] in its Sur-Reply, but even then, failed to argue the identical conditional limitations in claim 8 should be treated differently than they had been treated for claim 1. Appx659 (noting that "claims 8[c] and 8[d] include similar language"). In short, Sisvel treated claim 8 as an afterthought in the proceedings below and cannot belatedly raise new arguments on appeal.

If the Court reaches this argument despite Sisvel's waiver, however, and even accepting Sisvel's argument that limitations 8[c] and 8[d] are not conditional (which the Court should not), any error by the Board on this issue is harmless. Sachs explicitly discloses both limitations. Specifically, as explained above, the Sachs "Summary" discloses the use of a delay timer (T_reorder timer) that is stopped before it expires when the missing data packet arrives (limitation 8[c]) or, in the alternative, sends a retransmission request (*i.e.*, a status report) if the missing data packet does not arrive before the timer expires (limitation 8[d]). Sachs reinforces these teachings in Figures 4 and 5, which correlate to each of these specific scenarios, with Figure 5 (annotated below) depicting the limitation 8[c] scenario in which the timer is stopped when the missing data packet arrives and Figure 4 (annotated below) depicting the limitation 8[d] alternative scenario in which the timer instead expires because the missing data packet did not arrive and a retransmission request (*i.e.*, a status report) is transmitted.




Figure 5




Figure 4

Appx1172 (annotated copy of '396 patent Figure 5); Appx1169 (annotated copy of '396 patent Figure 4).

Moreover, the Board has already concluded that Sachs discloses both of substantively identical limitations 1[c] and 1[d]. *See* Appx19 ("Petitioner sufficiently shows that limitations 1[a], 1[b], and 1[c] are performed in Figure 5 of Sachs. Under an alternative theory, limitations 1[a], 1[b], and 1[d] are performed in Figure 4 of Sachs."). The Board's determination that claim 8 is invalid as anticipated and rendered obvious should therefore be affirmed.

## B. The Board's Factual Determination that Sachs Teaches and Suggests Limitation 1[c] Is Supported by Substantial Evidence

Sisvel repeats on appeal its technical arguments regarding Sachs' disclosure of the T_reorder timer. RB at 68-72. Despite presenting this argument in a subsection referring to the Board's "legally erroneous conditional framework," there is no legal error here. RB at 68. Sisvel is instead challenging the Board's factual determination that Sachs discloses limitation 1[c]. The Board's factual determinations are reviewed for substantial evidence. A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co.*, 305 U.S. at 229. "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (internal quotation omitted) (alteration incorporated).

Sisvel cannot make the necessary showing. The Board explained its determination that Sachs disclosed limitation 1[c] of the '396 patent in detail. Appx13-19. And it specifically considered and rejected Sisvel's claim that Sachs' T_reorder timer is tied to delaying the reordering procedure, not the status report. Appx17. The Board explained that it was persuaded by Sachs' express teachings that "it is advantageous to delay a request for a retransmission of missing data

packets by the timer," which directly ties the timer to the transmission of a status report. *Id.* (quoting Appx1275(9:24-26)). The Board further relied on Sachs' teaching that, "[i]n a preferred embodiment, the timer is stopped before the timer expiry when ***at the reception of a data packet the sequence is established***." *Id.* (quoting Appx1275-1276(9:34–10:1)) (emphasis in original). The Board also relied on Appellants' annotated copy of Figure 5, which discloses that the T_reorder timer is stopped when out-of-order PDUs 3 and 4 are received—no additional step of reshuffling is taught as occurring before the timer is stopped. *Id.*

Relying on the explicit, consistent, and repeated teachings of Sachs, the Board provided its analysis and concluded that "the cited evidence in Sachs more closely supports [Appellants'] position that the 'timer is stopped when and because the missing PDUs are received,' and not after the occurrence of some additional step in which PDUs in the RLC buffer are shuffled into sequential order." Appx18. The Board further noted that Sisvel's argument to the contrary was "unavailing because it is not supported by the cited evidence." *Id.* The Board specifically considered and rejected the same evidence on which Sisvel relies now, noted that neither Sisvel nor its declarant could explain why the reordering procedure purportedly takes place first, and criticized Sisvel for failing to provide any further detail or explanation. *Id.* Indeed, the Board found that ***none*** of the portions of Sachs on which Sisvel relied

"sufficiently supports" a claim that Sachs teaches a reordering procedure that is performed before the status report is sent. *Id.*

Sisvel's claim that the Board "simply (but critically) misunderstood the function of the T_reorder timer," and its repeated presentation of the same arguments the Board already considered and rejected, does not establish that the Board's factual determination for limitation 1[c] lacks substantial evidence. The Board's determination on this issue should therefore be affirmed.

### C. Sisvel's Belated Request to Construe Its Claims to Be "Nonsensical" (and Therefore Indefinite) Should Not Allow It To Escape the Board's Invalidity Determination

To avoid the Board's invalidation of its claims based on anticipation, Sisvel takes the bizarre position that this Court should reverse the Board's findings because the claims are instead invalid as indefinite. This hardly saves the '396 patent.

As Appellants previously explained (BB at 30 n.11), APJ Moore authored a dissent that would have deferred invalidity of the '396 patent to a district court under Section 112. Specifically, he expressed his concerns as to limitation 1[c] (and corresponding limitation 8[c]): "stopping the timer when the at least one data block is received from the transmitter while the timer is running, ***in order to prevent a triggering of a status report before the timer expires***." Appx46 (quoting Appx209(16:46-49)) (emphasis added); *see also* Appx210(18:1-4) (identical limitation 8[c] except for the verb tense). He explained his interpretation that,

through a potential mistake during prosecution, the language "in order to prevent a triggering of a status report" was added to the "stopping the timer" limitation "instead of the 'starting a timer' limitation, which would have made more sense." Appx46. He observed that "[t]he claims are basically nonsensical" as written and have Section 112 "problems." Appx49. Section 112, of course, is outside the purview of the Board. *See Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020) (explaining that indefiniteness "is simply another ground on which the claims might be challenged in an appropriate forum (other than the Board)"). He noted that the majority had therefore instead "rel[ied] on similarities between Sachs and the patent's disclosure" but had not "confront[ed]" the language of limitation 1[c].

Appellants agree that the '396 patent claims suffer from multiple fatal defects, including that claims 1 and 8 are invalid as indefinite, lacking written description, and not enabled under Section 112. *See* Appx49 (APJ Moore commenting on the "written description or enablement problems" for limitation 1[c]). Appellants' Petition and papers and arguments in the proceedings below did not address indefiniteness, however, because the Board cannot address indefiniteness.

Even if (as Appellants agree) the challenged claims are indefinite, Appellants respectfully submit the Board can (and did) still address invalidity by considering the '396 patent's disclosures in and accompanying Figures 12 and 13. *See* Appx200

(Figure 12); Appx201 (Figure 13); Appx208(14:51-54) (the status report is transmitted only after the second timer in Figure 12 expires); Appx209(15:13-16) (the receiver reports to the transmitter that it did not receive the PDU when the timer expires). While determining invalidity from the '396 patent's disclosures rather than its claim language may not be appropriate in all cases, it was appropriate here for limitations 1[c] and 8[c] specifically because Sisvel conceded to this claim construction for purpose of the IPR proceedings. Appx9 (the Board noting that the parties implicitly construe claim limitation 1[c] similarly). As the Court has explained, "it is not always impossible to adjudicate a prior-art challenge, one way or the other, just because some aspect of a claim renders the claim indefinite." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813 (Fed. Cir. 2021). Here, the Board found adjudication ***possible*** by focusing on the '396 patent's disclosures, and there is no reason to disturb that finding on appeal.

Appellants therefore respectfully request the Court decline Sisvel's belated attempt to sidestep the Board's invalidity determination under Section 102 and 103.

## IV. Conclusion and Statement of Relief Sought

The Board's decision with respect to claims 1-2 and 6-8 should be affirmed, and the Board's decision with respect to dependent claims 3-5 and 9-10 should be reversed, or at least vacated and remanded.

October 20, 2023

Respectfully submitted,

*/s/ Kourtney Mueller Merrill*
Kourtney Mueller Merrill
Amanda Tessar
PERKINS COIE LLP
1900 Sixteenth St., Suite 1400
Denver, Colorado
Phone: (303) 291–2388
E-mail: kmerrill@perkinscoie.com
atessar@perkinscoie.com

**COUNSEL FOR APPELLANT SIERRA WIRELESS, ULC**

Bradford F. Cangro
**PV LAW LLP**
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 869-4667
bradford.cangro@pvuslaw.com

*/s/ Jeremy D. Peterson*
Jeremy D. Peterson
**PV LAW LLP**
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 871-0140
jeremy.peterson@pvuslaw.com

**COUNSEL FOR APPELLANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC.**

Brian P. Bozzo
**K&L GATES LLP**
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-6500
brian.bozzo@klgates.com

*/s/ Erik J. Halverson*
Jeffrey Gargano
Erik J. Halverson
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 807-4226
jeffrey.gargano@klgates.com
erik.halverson@klgates.com

**COUNSEL FOR APPELLANT HONEYWELL INTERNATIONAL INC.**

Kyle Auteri
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0824
kauteri@pearlcohen.com

*/s/ Guy Yonay*
Guy Yonay
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0800
gyonay@pearlcohen.com

**COUNSEL FOR APPELLANT TELIT CINTERION DEUTSCHLAND GMBH F/D/B/A THALES DIS AIS DEUTSCHLAND GMBH**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b). Excluding the portions exempted by rule, the brief contains 13,469 words as counted by the word-processing software used to prepare it.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word and 14-point Times New Roman type.

Dated: October 20, 2023 By: *<u>/s/ Kourtney Mueller Merrill</u>*
Kourtney Mueller Merrill

## CERTIFICATE OF AUTHORITY

I certify under penalty of perjury under the laws of the United States that I have the authority of Jeremy Peterson, counsel for Appellant TCL, Erik J. Halverson, counsel for Appellant Honeywell, and Guy Yonay, counsel for Appellant Telit, to file this document with their electronic signatures.

Dated: October 20, 2023 By: *<u>/s/ Kourtney Mueller Merrill</u>*
Kourtney Mueller Merrill