Nos. 2023-1059, 2023-1085, 2023-1086, 2023-1089, 2023-1125

# United States Court of Appeals for the Federal Circuit

SIERRA WIRELESS, ULC, HONEYWELL INTERNATIONAL INC., TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC., TELIT CINTERION DEUTSCHLAND GMBH, f/d/b/a THALES DIS AIS DEUTSCHLAND GmbH,

*Appellants,*

v.

SISVEL S.P.A.,

*Cross-Appellant.*

On Appeal from the USPTO Patent Trial and Appeal Board in *Inter Partes* Review No. IPR2021-00580

## REPLY BRIEF OF CROSS-APPELLANT SISVEL S.P.A.

Timothy Devlin
tdevlin@devlinlawfirm.com
Nadiia Loizides
nloizides@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Attorneys for Cross-Appellant Sisvel S.p.A.*

Corrected on December 11, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1059, 2023-1085, 2023-1086, 2023-1089, 2023-1125

**Short Case Caption** Sierra Wireless, ULC v. Sisvel S.p.A.

**Filing Party/Entity** Sisvel S.p.A.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/11/2023

Signature: /s/ Timothy Devlin

Name: Timothy Devlin

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Sisvel S.p.A. | | Sisvel International S.A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Stephanie Berger (Devlin Law Firm) | Jorge Espinosa (Gray Robinson, P.A.) | |
| Andrew DeMarco (Devlin Law Firm) | Francesca Russo (Gray Robinson, P.A.) | |
| Peter A. Mazur (Devlin Law Firm) | Robert R. Jimenez (Gray Robinson, P.A.) | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF AUTHORITIES ..........................................................................v

INTRODUCTION ...........................................................................................1

ARGUMENT ...................................................................................................3

I. The Board Erroneously Invalidated Claims 1, 2, And 6-8 Based On An Alleged Conditionality Of Elements 1[c] And 1[d]......................................3

A. The Majority Applied A Legally Erroneous Framework......................3

B. The Board's Invalidity Determination For System Claim 8 Should Be Reversed.........................................................................................9

II. The Board's Determination That Sachs Teaches Or Suggests Limitation 1[c] Is Not Supported By Substantial Evidence..........................................13

III. Appellants Have No Substantive Response To Their Failure To Meet Their Burden Of Proof As Detailed In APJ Moore's Dissent .....................22

CONCLUSION ..............................................................................................25

CERTIFICATE OF COMPLIANCE ..............................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applera Corp. v. Illumina, Inc.*,
375 F. App'x 12 (Fed. Cir. 2010)....................5

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015)....................11

*Brown v. 3M*,
265 F.3d 1349 (Fed. Cir. 2001)....................5

*Carrum Techs., LLC v. Unified Patents, LLC*,
No. 2020-2204, 2021 U.S. App. LEXIS 24134 (Fed. Cir. Aug. 13, 2021)..........20

*Chemours Co. FC, LLC v. Daikin Indus*.,
4 F.4th 1370 (Fed. Cir. 2021)....................13

*Consol. Edison Co. of N.Y. v. NLRB*,
305 U.S. 197 (1938)....................4

*Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*,
243 F. App'x 603 (Fed. Cir. 2007)....................5

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018)....................15

*Ex Parte Schulhauser*,
Appeal No. 2013-007847,
2016 Pat. App. LEXIS 2437 (P.T.A.B. Apr. 28, 2016).................... passim

*Hytera Communs. Co. v. Motorola Sols., Inc.*,
841 F. App'x 210 (Fed. Cir. 2021).................... passim

*In re Hiniker Co.*,
150 F.3d 1362 (Fed. Cir. 1998)....................24

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021).................... 23, 24

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016).................... 16, 22

*Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*,
609 F.3d 1364 (Fed. Cir. 2010).................... 1, 4, 5, 6

**Page(s)**

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
948 F.3d 1342 (Fed. Cir. 2020)....................23

*SEC v. Chenery Corp.*,
318 U.S. 80, 63 S. Ct. 454 (1943)....................12

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................4

**Statutes**

35 U.S.C.S. § 311....................23

## INTRODUCTION

The Board's decision invalidating claims 1, 2, and 6-8 should be reversed. Appellants raise numerous arguments in response, but none has merit.

For instance, Appellants assert that the Board correctly treated elements 1[c] and 1[d] of claim 1 as conditional elements of a method that could be invalidated by prior art including just one *or* the other element, but not both. As Sisvel explained, that conclusion based on the conditionality principles the Board promulgated in *Ex Parte Schulhauser*, Appeal No. 2013-007847, 2016 Pat. App. LEXIS 2437 (P.T.A.B. Apr. 28, 2016), misapplies this Court's precedent, which teaches that prior art must disclose *every* step of a claimed method, including conditional ones, particularly when each claimed step must be performed in "response to either alternative condition." *Hytera Communs. Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 218 (Fed. Cir. 2021). Appellants respond by claiming that this Court never questioned *Schulhauser*'s teaching in *Hytera* and that Sisvel is misreading *Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364 (Fed. Cir. 2010). But the Court in *Hytera* held that *Lincoln* was "binding precedent" and taught that, "to render [a claim] obvious, the prior art must teach each step of the claim, including the response to each condition in the [conditional] step." *Hytera*, 841 F. App'x at 215, 218.

Appellants' other arguments are equally unavailing. For example, Appellants' argument regarding system claim 8 fails for several reasons, including because the Board's conditionality framework cannot apply to system claims under any circumstances (even *Schulhauser* says so). And contrary to Appellants' arguments, the Board's finding that claim 8 contained conditional limitations (presumably, 8[c] and 8[d]—though the Board did not specify) cannot be harmless error because the Board's invalidation of claim 8 based on Sachs hinged on its conditionality conclusion applying the principles of *Schulhauser*.

Appellants also argue that the Board's finding that Sachs renders obvious element 1[c] is supported by substantial evidence. YB54. But, as Sisvel explained, Sachs expressly states that its T_reorder timer is used to delay the reordering procedure and it stops *after* the reordering procedure is finished—*i.e.*, it stops at a *different* time and for a *different* reason than the timer in the '396 patent, which is stopped when the data is received. *See, e.g.*, RB68; Appx209; Appx1172-1173 (¶ 154); Appx3211 (¶ 29); Appx3158 (¶ 53). Appellants never substantively refute that clear point.

Appellants also oddly argue that Sisvel's citation to APJ Moore's dissent requires a "nonsensical" interpretation of the claims. YB56. But it requires no such thing. APJ Moore correctly determined in the dissent that Appellants failed to show that the prior art met *Appellants'* interpretation of the claims. Whether *Appellants'*

*interpretation* of the claims renders them nonsensical is irrelevant. That is the interpretation *they* advanced in *their own* Petition and their procedural evidentiary failure to prove that the prior art practiced the claims *as Appellants interpreted them* warrants reversal of the Board's invalidity decision.

The Board's decision invalidating claims 1, 2, and 6-8 should be reversed.

## ARGUMENT

### I. The Board Erroneously Invalidated Claims 1, 2, And 6-8 Based On An Alleged Conditionality Of Elements 1[c] And 1[d]

#### A. The Majority Applied A Legally Erroneous Framework

The litany of (roughly *six*) arguments that Appellants raise to defend the Board's conditionality conclusion for elements 1[c] and 1[d] has no merit.

First, Appellants argue that the Board did not rely on *Schulhauser*. YB45. Not so. In footnote 5 of the Petition, Appellants directly relied on *Ex Parte Schulhauser*, Appeal No. 2013-007847 (PTAB Apr. 28, 2016), 8-10, to support their assertion that elements 1[c] and 1[d] are conditional limitations that do not both have to be satisfied. Appx255 n.5. Appellants then twice directed the Board back to that footnote when discussing *Schulhauser* in their reply. Appx619-620. In response, Sisvel distinguished the case and even explained how claim 1 was similar to the claim in *Hytera* (an argument presented again on appeal). Appx659-660; *see also* Appx513-514. Against that backdrop, the Board cited twice to footnote 5 of the Petition to (wrongly) conclude that Appellants "persuasively" argued that elements

1[c] and 1[d] are "mutually exclusive" (language from *Schulhauser*). *Compare* Appx16, *with Schulhauser*, 2016 Pat. App. LEXIS 2437, *8. The Board clearly and erroneously relied on *Schulhauser*.

Second, Appellants argue that the Board was finding fact, not making a legal conclusion, when it declared "that both limitations refer back to the single timer described in 1[b] and that limitations 1[c] and 1[d] are mutually exclusive: the timer either stops or expires, but it cannot do both while performing the method." YB45 (quoting Appx16). The issue, though, is not whether the Board's factual finding that a timer can stop or can expire is correct—it is whether the Board correctly construed (and then applied) elements 1[c] and 1[d] as conditional limitations and rejected Sisvel's argument that both must be disclosed in a single prior art embodiment to establish invalidity. *See* RB65-68. That is a question of law. *See Hytera*, 841 F. App'x at 215-18 (conditionality is an issue of claim construction); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015).[1]

Third, Appellants contend that the Board correctly relied on *Schulhauser* despite *Hytera* and *Lincoln*. YB46. For instance, Appellants argue that this Court did not call *Schulhauser* or its conditionality principle into question in *Hytera* but simply "went to considerable efforts to distinguish" it. YB46. But calling

[1] Appellants also cite to the Supreme Court's opinion in *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197 (1938). YB45-46. Beyond the definition of the substantial evidence standard of review, that case has no application here.

*Schulhauser*'s conditionality holding into question is exactly what the Court did in *Hytera* (along with directly undermining it).

In *Hytera*, the Court clearly stated that the Board's decision in *Schulhauser* was not binding in any way, explained why it did not align with the Court's precedent (*i.e.*, *Lincoln*), and then declared there was no need to actually decide if *Schulhauser*'s treatment of conditional steps was right because the case was distinguishable on the facts in any event. *See, e.g.*, *Hytera*, 841 F. App'x at 218 ("The nonbinding precedent [including *Schulhauser*] does not convince us otherwise."); *id.* at 216 ("Importantly, opinions from the Board are not binding on this court."); *id.* at 217 ("We make no comment on whether *Schulhauser* was correctly decided by the Board . . . ."); *id.* at 215 (explaining that "[w]e rejected that argument" in *Lincoln* that a method claim's element need not be practiced in the prior art if it were "conditional"); *see also id.* at 216 ("[*Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001)] is distinguishable . . . ."); *id.* at 216-17 (also distinguishing *Applera Corp. v. Illumina, Inc.*, 375 F. App'x 12 (Fed. Cir. 2010) and *Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 F. App'x 603 (Fed. Cir. 2007)).

Indeed, the holding in *Hytera* (and its application here) could not be clearer. The "selecting" limitation in that case was "written in conditional language, with two alternative conditions and corresponding responses": "*if* the timeslot is the current desired timeslot, selecting a synchronization pattern selected from the first

set of synchronization patterns . . . ; *otherwise* selecting a synchronization pattern selected from the second set of synchronization patterns." *Hytera*, 841 Fed. App'x at 215 (emphasis original). In other words, if (a) happens (desired timeslot), then (c) happens (choose from the first set); whereas if (b) happens (not desired timeslot), then (d) happens (choose from the second set). *See id.*

That is exactly how the Board and Appellants read the relevant limitations here—if (a) happens (timer stops), then (c) happens (prevent triggering status report); whereas if (b) happens (timer expires), then (d) happens (transmit status report). In *Hytera*, the patent challenger (just like Appellants here) argued that, "to render the claim obvious, the prior art need only teach one condition and its corresponding response." *Id.* at 215. The Court rejected that argument and held that it "does not square with our precedent in *Lincoln*," which instructs as "binding precedent" that, "to render [a claim] obvious, the prior art must teach each step of the claim, including the response to each condition in the [conditional] step." *Id.* at 215, 218. There is no mistaking that holding and its application here.[2]

[2] Incongruously, in *Hytera*, the Board *followed that precedent* and required the prior art to teach both conditional responses. *See Hytera*, 841 Fed. App'x at 215. The Board cannot take two approaches to the same legal principle to maintain one patentee's property rights under one interpretation of law while simultaneously revoking another patentee's property rights under the completely opposite interpretation of the same principle. That is the very definition of arbitrary and capricious decision making and clearly violates due process principles and the APA.

Fourth, Appellants argue that Sisvel failed to explain why the method in claim 1 would be incomplete after the first allegedly contingent limitation 1[c]. YB48. But Sisvel did:

> elements 1[c] and 1[d] naturally imply that element 1[c] is not the end of the method—element 1[c] recites that the purpose of the timer is "to prevent a triggering of a status report before the timer expires" when a data block is received and element 1[d] recites sending a status report indicating receipt of a data block.

RB67. Likewise, Sisvel explained that claim 1 recites "a method of performing automatic repeat request (ARQ) in a wireless communication system . . ." (Appx209 (preamble of claim 1)), and it would be unreasonable to conclude that such a method is complete when the timer is stopped upon receipt of a data block in element 1[c], without performing the ARQ incorporating a status report in element 1[d]. RB68. In other words, both conditions in the claim are inextricably intertwined within one complete claimed method.

Fifth, Appellants assert that Sisvel argues for the first time that limitations 1[c] and 1[d] are both performed "in response to an alternative condition—receipt of the missing block while the timer is running," and that Sisvel cannot offer this purportedly new construction on appeal. YB48-49. Sisvel is not proposing a new construction. It is explaining that, even under Appellants and the Board's view of elements 1[c] and 1[d], claim 1 more naturally and reasonably reads as a single method per the guidance in *Hytera*. Specifically, the Board concluded:

> limitations 1[c] and 1[d] cannot both occur in response to the same set of stimuli. Limitation 1[c] can be triggered in response to one set of stimuli and limitation [d] can be triggered in response to a different set of stimuli as is shown in Sachs's figures. . . . [U]nder a first theory, with a first set of stimuli, the timer is stopped before it expires and limitations 1[a], 1[b], and 1[c] are performed as shown in Figure 5 of Sachs. Under a second theory, with a different, second set of stimuli, the timer is allowed to expire and limitations 1[a], 1[b], and 1[d] are performed as shown in Figure 4 of Sachs.

Appx16 (internal citations omitted). Putting aside that the Board appears to be erroneously construing elements 1[c] and 1[d] by comparing them to Sachs's disclosure and not the '396 patent's specification, it is clear from this excerpt that the Board meant receipt of the missing block while the timer is running when it referred to "the first set of stimuli" and non-receipt of the missing block while the timer is running when it referred to "the second set of stimuli." Appx16-17. Thus, Sisvel did not forfeit any arguments here.

Sixth, Appellants assert that Sisvel and its expert failed to explain how the same timer can first be stopped and then expire. YB49. Appellants miss the point. Even if that "mutually exclusive" reading were correct, *Hytera* explains that the same prior art references must teach one complete equivalent method (*i.e.*, with *both* conditions and responses). Indeed, the claim in *Hytera* recited selecting a pattern from one of two mutually exclusive pattern sets if the desired timeslot was available *or* otherwise (*i.e.*, if the desired timeslot was not available) selecting a pattern from

the second set. *Hytera*, 841 F. App'x at 215. The Board and this Court read that claim as a single method rather than "two distinct methods." *Id.* at 218.

### B. The Board's Invalidity Determination For System Claim 8 Should Be Reversed

The Board invalidated system claim 8 for the same reasons as method claim 1 (*i.e.*, applying the same erroneous conditionality reading). *See* Appx20; RB72-73. As Sisvel explained, that was reversable error because even the *Schulhauser* conditionality framework for *method* claims cannot apply to *system* claims. *See* RB72; *see also Schulhauser*, 2016 Pat. App. LEXIS 2437, at *19-20 ("[I]nterpretation of [a] system claim differs from [a] method claim because the structure . . . *is present in the system regardless* of whether the condition is met and the function is actually performed.") (emphasis original). In short, the receiver of claim 8 must be configured to perform *all* the functions recited therein, including stopping the timer when the at least one data block is received from the transmitter while the timer is running under element 8[c] (akin to element 1[c]) *and* transmitting the status report to the transmitter after the timer expires under element 8[d] (akin to element 1[d]). *See* RB73. That alone warrants reversal for claim 8 (and constitutes alternative grounds for affirmance on dependent claims 9 and 10).

Appellants' arguments to the contrary are unavailing. First, Appellants assert that the Board correctly invalidated claim 8 for "substantially similar" reasons as with claim 1 because "claim 8 is identical to claim 1 except that it presents the

claimed method as a receiver comprising an RLC entity and changes the limitation verb tenses." YB50-51. But, again, the receiver claimed in claim 8 must be configured to perform *all* the functions recited therein, including those in elements 8[c] *and* 8[d] *even if Appellants' preferred view of conditionality applies*. *See* RB73.

Second, Appellants assert that Sisvel forfeited (in Appellants' language, "waived") any argument that claim 8 should be reviewed differently because Sisvel purportedly addressed conditionality of elements 8[c] and 8[d] only in the sur-reply below. YB51. However, Appellants never argued in the Petition that elements 8[c] and 8[d] were conditional. On the contrary, in footnote 5 of the Petition, Appellants asserted only that elements 1[c] and 1[d] *of claim 1* were conditional. Appx255 n.5. To the point, in the Petition's element-by-element challenges, Appellants characterized element 1[c] as "conditional" (Appx275) and element 1[d] as "optional" (Appx278), but they did not describe elements 8[c] and 8[d] as either (*see* Appx281-283). Similarly, Appellants contended below that claim 5 depending from claim 1 was conditional, but there is no corresponding contention for claim 10 depending from claim 8, even though claims 5 and 10 were otherwise discussed together in the Petition. Appx292-296.

Additionally, Sisvel has consistently asserted below that elements 1[c] and 1[d] were not conditional limitations because, among other things, claim 1 is more naturally read as a single method, like in *Hytera*, and that the Board's conditionality

framework does not apply to claim 1. Appx513-514; Appx659-660; *see also* RB65-68. By Appellants' own logic, therefore, if the Board's conditionality framework does not apply to method claim 1 (and it does not, *see supra* Argument.I.A), then it certainly cannot apply to a purportedly "identical" (YB50) system claim 8.

Third, Appellants assert that, even if the Board erred when it found that claim 8 contains conditional limitations, the error was harmless. YB52. But it was not. This Court has held that an error by the Board is harmless only if "an erroneous portion of [the Board's] ruling is ultimately non-prejudicial, *i.e.*, not material to the bottom-line result given other portions of the [Board's] ruling." *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015). Here, the Board's holding invalidating claim 8 hinges on the Board's erroneous finding that claim 8 contained conditional limitations (just like for claim 1). Appx20. That allowed the Board to invalidate claim 8 based on Sachs and overlook that Appellants relied on *separate and distinct* embodiments in Figures 4 and 5 of Sachs to teach elements 1[c] *or* 1[d] (but not both). *See* Appx19-20. Thus, the Board's error was materially prejudicial.

In addition, Appellants argue there was no harm since Sachs's summary purportedly discloses the use of a delay timer that stops or, in the alternative, sends a retransmission request. YB52. And Appellants also suggest that Figures 4 and 5 "correlate to each of the[] specific scenarios" required by 1[c] and 1[d]. YB52. But

Appellants do not specify where in the summary Sachs discloses the functionality Appellants suggest is there, and it is not readily apparent, so Sisvel cannot meaningfully respond to that improperly skeletal argument.

Moreover, if Appellants are referring to the portion of Sachs's summary on which they relied in their opening brief (*see* BB43-44 (quoting Appx1275-1276 (9:11–10:4))), that portion speaks of two different embodiments—one in which a request for retransmission is delayed until after the timer expires (Appx1275 (9:28-32)), and another in which the timer is stopped and the transmitter does not have to wait until the timer expires for an acknowledgement that data packets were received correctly (Appx1275-1276 (9:34–10:4)). *See* RB48. As for Figures 4 and 5, again, they illustrate two different embodiments, and, in any event, Appellants forfeited any argument that a POSITA reading Sachs would "at once envisage" the inventions because they did not raise that argument until their post-institution reply (nor is it readily apparent how or why a POSITA would mix those disclosures at all). *See, e.g.*, Appx514-517; Appx623-624; Appx660-663; RB37-44. Not to mention that affirmance on any of these arguments would be improper since they were not the basis for the Board's opinion. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

Fourth, Appellants argue that the Board already concluded that "Sachs discloses both of substantively identical limitations 1[c] and 1[d]." YB53. That, though, simply ignores that even the Board's *Schulhauser*-based conditionality

framework cannot apply to system claims. And, in any event, the Board's holding that claim 1 covered two distinct methods was erroneous and should also be reversed. *See supra* Argument.I.A.

## II. The Board's Determination That Sachs Teaches Or Suggests Limitation 1[c] Is Not Supported By Substantial Evidence

Sachs does not teach or suggest element 1[c] of claim 1, and the majority's contrary holding unsupported by substantial evidence requires vacatur or reversal. *See* RB68. Sachs's T_reorder timer is used for a different purpose and stops at a different time than the timer in the '396 patent, as confirmed by numerous disclosures from Sachs, the testimony of Appellants' expert Dr. Kakaes, and Appellants' concessions. RB68-72.

The Board concluded that Sachs reads on element 1[c] because Sachs's T_reorder timer "is stopped when and because the missing PDUs are received, and not after the occurrence of some additional step in which PDUs in the RLC buffer are shuffled into sequential order." Appx18 (internal citation marks and emphasis omitted). There was no reasonable basis for that conclusion provided by the Board. *See* RB68-72; *Chemours Co. FC, LLC v. Daikin Indus*., 4 F.4th 1370, 1374 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1418 (2022) ("In making its factual findings, the Board must have both an adequate evidentiary basis for its findings and articulate a satisfactory explanation for those findings.").

Nor could the Board provide such a reasonable basis. Sachs's T_reorder timer is directed to delaying a reordering procedure (*i.e.*, delaying reshuffling of data blocks in the buffer). *See, e.g.*, Appx1275 (9:11-15) ("[T]he delay parameter is a timer that is started for every data packets arriving out of sequence, and the triggering of the reordering procedure . . . is delayed by the duration of the timer."); Appx1265 (Abstract); Appx1274 (8:25-31). And Sachs's timer is stopped only after *both* (i) the missing data blocks are received, and (ii) the reordering procedure is completed. *See, e.g.*, Appx1280 (14:1-4). In contrast, the timer in element 1[c] of the '396 patent is stopped "in order to prevent a triggering of a status report before the timer expires" (Appx209 (claim 1)), while reordering under the patent would take place at a different time and at a higher level, such as access gateway (*see* Appx3158-3159 (¶¶ 54-55); Appx515-516; Appx358-359). Appellants' expert Dr. Kakaes even confirmed that Sachs's T_reorder timer is stopped "when reordering is finished" and explained that "reordering in the RLC is part of the 3GPP protocols" and means that, "when the missing PDUs are received, the PDUs in the buffer can be reordered." Appx1172-1173 (¶ 154). Appellants themselves also effectively admitted that receipt of the missing data blocks is not enough to stop Sachs's T_reorder timer. *See* Appx294; Appx621 (Appellants' reply below reproducing Figure 5 of Sachs with blue and red graphics added by them, circling in red the phrase "stop timer when re-ordering is finished"). It is thus clear that Sachs does not teach element 1[c].

Appellants' response to this fact is unavailing. First, Appellants imply that Sisvel applies the wrong standard of review. YB54 ("Despite presenting this argument in a subsection referring to the Board's 'legally erroneous conditional framework,' there is no legal error here."). It was reasonable for Sisvel to group this issue with its conditionality arguments—if the Board's erroneous conclusions that elements 1[c], 1[d], 8[c], and 8[d] are conditional are overturned (as they should be), then the Board's holding that Appellants met their burden on invalidity despite their failure to show that Sachs teaches all elements of these claims in a single embodiment (*see* Appx19) should also be reversed, not least because Sachs discloses a different timer than the '396 patent's element 1[c]. Regardless, Sisvel has consistently argued that the Board's holding that Sachs teaches or suggests element 1[c] is not supported by substantial evidence. RB72.

Second, Appellants (at YB54) rely on *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354 (Fed. Cir. 2018), to argue that, if two inconsistent conclusions may be drawn from the evidence in the record, the Board's decision in favor of one conclusion should be affirmed. *Elbit*, however, dealt with a situation where only one conclusion could have been drawn from the record and where the appellant failed to make a legal argument that substantial evidence did not support the Board's decision to credit the patentee's explanation of nonobviousness, while the appellant's second counterargument was unsupported conjecture. *See id.* at

1358-59. Here, the record—including Sachs's disclosures, expert testimony, and Appellants' effective admissions—overwhelmingly points to only one reasonable conclusion: that Sachs did not teach or suggest the timer in element 1[c]. *See, e.g.*, Appx1275 (9:11-15); Appx1280 (14:1-4); Appx209 (claim 1); Appx3158-3159 (¶¶ 54-55); Appx515-516; Appx358-359; Appx1172-1173 (¶ 154); Appx294; Appx621; RB68-72.

Third, Appellants assert (at YB54-55) that the Board already rejected Sisvel's argument that Sachs's T_reorder timer is tied to the reordering procedure and not the status report and was purportedly persuaded by Sachs's express teachings that "it is advantageous to delay a request for a retransmission of missing data packets by the timer," which directly ties the timer to the transmission of a status report. Appx17 (quoting Appx1275 (9:24-26)). But only in their post-institution reply did Appellants belatedly and without support contend that the starting and running of the timer "delays" the transmission of the status report. Appx623-624; *see also* Appx663 (Sisvel challenging this belated and unsupported argument). Thus, this argument was forfeited, and the Board improperly gave weight to it. *See Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) ("Once the Board identifies new issues presented for the first time in reply, neither this court nor the Board must parse the reply brief to determine which, if any, parts of that brief are responsive and which are improper.").

In any event, Appellants ignore the purpose of Sachs's T_reorder timer:

> The basic idea for the purpose of provisioning an efficient data transmission in a communication system with a receiving entity and a sending entity, wherein the sending entity provides the data for the transmission as a sequence of data packets in order, *is to delay the triggering of a reordering procedure for providing the sequence at the receiver by means of a delay parameter*, in case the receiver entity receives a data packet being out of the sequence order. The establishment of the sequence order of the data packets incoming during the duration of the delay is controlled by means of a controlling parameter.

Appx1274-1275 (8:25–9:2) (emphasis added). In other words, Sachs's delay parameter (the T_reorder timer) is used when the correct sequence of packets is broken because some of the packets are missing, and the T_reorder timer delays the reordering procedure (reshuffling of arrived packets in the buffer) and stops only after the correct sequence is established. Further, as explained below in response to Appellants' fourth argument, under Sachs it is impossible to establish the correct sequence until the reordering procedure is complete. *See infra* Argument.II. That confirms Sisvel's interpretation is correct.

Additionally, Appellants are wrong that Sachs "directly ties the timer to the transmission of a status report" (YB55) because Sachs discloses that status reports are not necessary, and that use of a timer may delay discarding of data packets. For example, Sachs explains that stopping, running, and expiry of the T_reorder timer in the acknowledged mode ("AM") may have no effect on transmission of a status

report because "[t]he status report can be sent after the timer expires or after the timer is stopped." Appx1277 (11:1-2). "The status report can also be sent during the duration of the timer." Appx1277 (11:2-3).[3] Also, right above the portion of Sachs's disclosure on which the Board and Appellants rely (Appx17 (quoting Appx1275 (9:24-26)) ("[I]t is advantageous to delay a request for a retransmission of missing data packets by the timer.")), Sachs discloses that in the unacknowledged mode ("UM"), "[w]ith the delay parameter like the timer the *discarding* of the data packets, which have been received out of order[,] is delayed." Appx1275 (9:19-21) (emphasis added). Thus, even if the Board could have considered Appellants' belated argument that the starting and running of Sachs's timer "delays" the transmission of the status report (it should not have), Appellants' position with which the Board agreed is not supported by substantial evidence and is contradicted by Sachs's own disclosure.

Fourth, Appellants assert (at YB55) that the Board correctly concluded that Sachs's T_reorder timer is stopped when the missing data packets later arrive based

[3] The quoted portion of Sachs's summary refers to embodiments, under which the status report can be sent after the timer expires; after the timer is stopped; or during the duration of the timer. Appx1277 (11:1-3). Appellants in their third argument rely on a portion of Sachs's summary that discusses yet another embodiment. *See* YB54-55 (quoting Appx1275 (9:24-26)). However, Appellants cannot ignore Sachs's teachings that do not fit their position, especially because, according to Appellants, all excerpts from Sachs's summary should be considered together. *See, e.g.,* BB43-45 (arguing that Sachs's summary is a single disclosure).

on Sachs's disclosure that, "[i]n a preferred embodiment, the timer is stopped before the timer expiry when at the reception of a data packet the sequence is established." Appx17 (quoting Appx1275-1276 (9:34–10:1)). However, this quote explaining that the timer is stopped "when . . . the sequence is established" underscores the Board's error. *See* Appx1275-1276 (9:34–10:1). This is because the correct sequence cannot be established without performing the reordering procedure. That is, when some data packets are missing, gaps are created in the data packet sequence. *See, e.g.*, Appx1268 (2:17-19). Even if all the missing data packets are received while the T_reorder timer is still running, this alone is not enough to reestablish the correct sequence of data packets because the missing packets arrive out of order. *See, e.g.*, Appx1268 (2:30-34) (explaining that, in prior art, even if all packets arrived but in the wrong order, unnecessary retransmissions would still need to be performed). By the same token, if all data packets arrived in the correct order, there would be no missing packets, and no need to start the T_reorder timer. *See, e.g.*, Appx1268 (2:30-34); Appx1279 (13:2-3) (explaining that in the Figure 4 embodiment, the T_reorder timer "is started for each PDU arriving out of sequence").

Accordingly, to determine if all missing packets arrived, the packets are reshuffled in the buffer and put in the right order. *See, e.g.*, Appx1279 (13:25-27) ("While being buffered, the STATUS report is updated, when PDUs are received

filling the gaps in the sequence of the PDUs.”). This is called the reordering procedure, and under Sachs, the T_reorder timer is not stopped until after the reordering procedure is performed. *See, e.g.*, Appx1279 (13:6-7) (“With starting the T_reorder the reaction of the RLC receiver is delayed until no more packets are reordered.”).[4]

Thus, Appellants’ position (with which the Board erroneously agreed) disregarded the actual language of Sachs and substituted it for their preferred language. But Appellants cannot read out unfavorable parts of the prior art. *See, e.g.*, *In re Scroggie*, 170 F. App’x 132, 135 (Fed. Cir. 2006) (reversing the Board’s obviousness holding because “generating page data” is different from the prior art’s “selecting” advertisements which contain hyperlinks leading to web pages generated from page data); *Carrum Techs., LLC v. Unified Patents, LLC*, No. 2020-2204, 2021 U.S. App. LEXIS 24134, at *18 (Fed. Cir. Aug. 13, 2021) (reversing the Board’s obviousness holding because the prior art reference’s teaching “reducing speed even during a turn” does not mean that the reference teaches “reducing speed because of where the vehicle is along the curve”).

Fifth, Appellants assert that the Board correctly relied on Appellants’ annotated copy of Sachs’s Figure 5, which purportedly “discloses that the T_reorder

[4] Additionally, Sachs does not disclose any other ways except the reordering procedure to determine whether all missing packets arrived.

timer is stopped when out-of-order PDUs 3 and 4 are received—no additional step of reshuffling is taught as occurring before the timer is stopped." YB55. However, Appellants' annotated copy of Sachs's Figure 5 (reproduced below) circled in red the words "stop timer when re-ordering is finished," *i.e.*, when the reordering procedure is finished:



Figure 5

Appx621 (Appellants' reply brief below reproducing Figure 5 of Sachs with blue and red graphics added by Appellants). In other words, Sachs expressly and unmistakably states that the T_reorder timer is stopped when the reordering procedure is finished. The Board's conclusion that Sachs's timer stops earlier—when the missing PDUs are received—is thus clearly unsupported by substantial evidence.

## III. Appellants Have No Substantive Response To Their Failure To Meet Their Burden Of Proof As Detailed In APJ Moore's Dissent

As Sisvel explained (at RB74-75), APJ Moore correctly concluded in the dissent that Appellants did not meet their burden to show that Sachs anticipates or renders obvious claims 1, 2, and 6-8. Appx50. Appellants' response is unavailing.

They claim, for example, that Sisvel is somehow "tak[ing] the bizarre position that this Court should reverse the Board's findings because the claims are instead invalid as indefinite." YB56. Sisvel never took that position. Sisvel argued that, as APJ Moore found, Appellants in their Petition asked that all terms be given their plain and ordinary meaning so that "stopping the timer" in element 1[c] of claim 1 was "to prevent a triggering of a status report before the timer expires." Appx48; Appx209. Under *that* construction *that Appellants* applied to control *their own Petition*, Appellants' invalidity case for the invalidated claims must fail because, as APJ Moore correctly concluded, Appellants never "even attempt[ed] to explain how Sachs discloses" that claim element when construed as Appellants desired. Appx50. That critical oversight warrants reversal. *See* RB74-75; Appx50. And this is not some "unscrupulous" argument by a patent owner seeking to multiply proceedings, as Appellants contend. YB49-50 n.7.[5] It is the law. *See Intelligent*, 821 F.3d at

---

[5] Appellants complain that the Board's decision should not be disturbed so that "an unscrupulous patent owner can continue to assert indefinite claims that emerge from the IPR process until and unless a district court invests additional time and resources to make an indefiniteness determination . . . ." YB49-50 n.7. There is nothing

1369 (holding that an IPR petition controls the course of an IPR). It is not a patentee's obligation to fix glaring dispositive deficiencies in an IPR petition seeking to take away its property rights.

Appellants also claim that the challenged claims are "invalid as indefinite, lacking written description, and not enabled under Section 112." YB57. The Board never so concluded (nor could it have). *See Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1350 (Fed. Cir. 2020); *see also* 35 U.S.C. § 311(b); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 813 (Fed. Cir. 2021). And such arguments were waived and forfeited by Appellants anyway. *See, e.g.*, Appx623-624 (Appellants arguing below that claim 1 is "inartful" but meets the definiteness requirement).

Appellants misplace reliance on *Intel*, too. *See* YB58. The Board did not purportedly follow the guidance in *Intel* and avoid an indefiniteness issue by finding "adjudication possible by focusing on the '396 patent's *disclosures*." YB58 (original bold and italics omitted; emphasis added). As APJ Moore correctly stressed in the dissent, it is "insufficient" to "compare the patent's disclosure to the prior art."

---

"unscrupulous" in requiring an IPR petitioner to follow the law. And Sisvel brought suit for patent infringement against Appellants in a federal district court that could have made any and all indefiniteness determinations that Appellants desired, but Appellants—not Sisvel—chose to change and expand the nature of the dispute between the parties by seeking review at the PTO. Appellants cannot complain about their strategic choice.

Appx46; *see also* Appx48 ("A proper invalidity analysis does not compare the patent's disclosure to the prior art[.]"); *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998) ("[T]he name of the game is the claim"). Thus, as APJ Moore rightly reasoned, Appellants chose in their Petition to construe element 1[c] as requiring "stopping the timer" "to prevent a triggering of a status report before the timer expires" but never "even attempt[ed] to explain how Sachs discloses" that claim element when construed as Appellants desired. Appx50. That procedural and evidentiary shortcoming mandated rejecting Appellants' Petition to invalidate the challenged claims on that basis. *See id.* Indefiniteness and *Intel* are irrelevant to that clear conclusion. And Sisvel did not somehow (*see* YB58) surreptitiously condone Appellants' interpretation of the claims by not directly contesting it for purposes of the IPR—again, it is not a patentee's job to rehabilitate a patent challenger's deficient IPR petition.

## CONCLUSION

For the foregoing reasons and those in Sisvel's principal brief, the Court should reverse or vacate the Board's decision to invalidate claims 1, 2, and 6-8.

December 11, 2023

Respectfully submitted,

*/s/ Timothy Devlin*
Timothy Devlin
tdevlin@devlinlawfirm.com
Nadiia Loizides
nloizides@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Attorneys for Cross-Appellant*
*Sisvel, S.p.A.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared in a proportionally spaced typeface in 14-point font and includes 5,796 words, excluding the parts exempted under those Rules.

*/s/ Timothy Devlin*
Timothy Devlin
tdevlin@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Attorney for Cross-Appellant*
*Sisvel, S.p.A.*